Susan STOKKA, on her own behalf as well as next friend for Joshua Stokka, Timothy Stokka and Ashley Stokka, Plaintiff and Appellant,

v.

CASS COUNTY ELECTRIC COOPERATIVE, INC., a North Dakota cooperative association, Defendant and Appellee.

Civ. No. 10863.

Supreme Court of North Dakota.

Sept. 4, 1985.

ERICKSTAD, Chief Justice.

Susan Stokka, on behalf of herself and Joshua, Timothy, and Ashley Stokka [Stokka], appeals from a district court summary judgment dismissing her action against Cass County Electric Cooperative, Inc. [CCEC] for damages resulting from the death of Milton Stokka. We reverse.

Stokka alleged in her complaint:

"III.

"That on December 19, 1981, at approximately 8:00 o'clock p.m. Milton Stokka was killed while snowmobiling when he struck an unmarked guy wire of Defendant's located on the west side of Cass County Road Number 17 approximately one half mile north of Horace, North Dakota.

"IV.

"That Defendant had actual and constructive knowledge that the location of the unmarked guy wire was in the middle of a well known and used snowmobile path and that the presence of said unmarked guy wire constituted a dangerous threat to the safety and well-being of snowmobilers there at.

"V.

"That Defendant knew or should have known, that the guy wire was unmarked and therefore not visible at night.

"VI.

"That Defendant willfully or maliciously failed to guard or warn against this dangerous condition, use, structure or activity by erecting said pole and guy wire in the direct path of a known snowmobile trail; ..."

CCEC filed a motion for summary judgment on the ground that there was "no evidence upon which even an inference of 'wilful' or 'malicious' conduct of defendant can be based as required by N.D.C.C. Ch.

Aarestad & Briggs, Fargo, and Melvin M. Belli, San Francisco, Cal., for plaintiff and appellant; argued by Wayne G. Aarestad, Fargo.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendant and appellee; argued by Douglas R. Herman, Fargo.

53–08." [1]  The trial court granted the motion. In determining that there were no genuine issues of material fact and that CCEC was entitled to summary judgment as a matter of law, the trial court determined that § 53–08–05, N.D.C.C., was applicable and stated in its order for judgment:

"Having reviewed the entire record herein in light of said statute and giving plaintiffs the benefit of all reasonable inferences to be drawn therefrom, the Court finds that there is no competent admissible evidence upon which a jury could base an inference of willful or malicious conduct on behalf of the defendant, Cass County Electric Cooperative, Inc. . . ."

Stokka has raised the following issues on appeal:

"I.   Did the Trial Court err in limiting the liability of owners of land in a public highway?

"II.   Is there competent admissible evidence upon which a jury could base an inference that Defendant failed to meet the appropriate standard of care herein? (A) ordinary care or skill if Chapter 53–08 is held not to apply herein? or (B) willful failure to warn against a dangerous structure if Chapter 53–08 is held to apply herein?"

Because Stokka has conceded that CCEC is an "owner of land" (§ 53–08–02, N.D.C.C.), it is unnecessary for us to determine whether or not one whose only interest in land is an easement is an "owner of land" to whom Chapter 53–08, N.D.C.C., applies. Stokka has conceded that Milton Stokka was on the land where the accident occurred for recreational purposes.

Stokka asserts that if the term "roads" in § 53–08–01, N.D.C.C., is interpreted to include public highways, then counties would have no duty to keep public highways safe for entry or use for recreational purposes, except for a "[w]illful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity . . . ." Section 53–08–05, N.D.C.C. No county is involved in this case, however. It is therefore unnecessary for us to determine whether or not a county may rely on the limited liability afforded by Chapter 53–08. Any opinion we might render on that matter would be advisory only.

Stokka contends that:

"The Trial Court erred in limiting the liability of owners of land in a public highway because such limiting of liability is not consistent with the intent of Chapter 53–08, N.D.C.C. and is against broad public policy expressed by both the Legislature and this Court. Furthermore,

1.   Sections 53–08–01, 53–08–02, and 53–08–05, N.D.C.C., provide:

"*53–08–01. Definitions.*   In this chapter, unless the context or subject matter shall otherwise require:

1.   'Charge' means the amount of money asked in return for an invitation to enter or go upon the land.

2.   'Land' includes roads, water, watercourses, private ways and buildings, structures and machinery or equipment thereon when attached to the realty.

3.   'Owner' includes tenant, lessee, occupant, or person in control of the premises.

4.   'Recreational purposes' includes, but is not limited to, any one or any combination of the following: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and visiting, viewing, or enjoying historical, archaeological, geological, scenic, or scientific sites, or otherwise using land for purposes of the user."

"*53–08–02. Duty of care of landowner.* Subject to the provisions of section 53–08–05, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes."

"*53–08–05. Willful or malicious failure to warn against dangerous conditions—Charge to enter.* Nothing in this chapter limits in any way any liability which otherwise exists for:

1.   Willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity; or

2.   Injury suffered in any case where the owner of land charges the person or persons who enter or go on the land other than the amount, if any, paid to the owner of the land by the state."

such limiting of liability is unconstitutional."

Stokka contends that the statute was intended to make available for recreational use only private land not previously available for recreational use. She contends that public highways were already available and used for recreational purposes before the enactment of Chapter 53–08 and Chapter 53–08 therefore does not apply in this case. Stokka asserts that in construing an ambiguous statute we may determine the intention of the Legislature by considering the object sought to be attained, the circumstances under which the statute was enacted, legislative history, and the consequences of a particular construction. Section 1–02–39, N.D.C.C. Stokka contends that one on a pleasure drive on a public highway would be entitled to less legal protection than one on a business trip, and that such inconsistent results render the statute ambiguous.

The fact that "the *purpose* of the trip becomes paramount," as Stokka asserts, does not render the statute ambiguous. Under the circumstances presented in this case, we find no ambiguity in the statute requiring us to consider extrinsic matters to determine legislative intent. Given the concession that CCEC is an "owner of land," it is readily apparent that the language employed "is sufficiently broad to encompass" [*Matter of Annexation of Part of Donnybrook Pub. Sch. Dist. No. 24*, 365 N.W.2d 514, 524 (N.D.1985) ] a holder of an easement over land burdened by a right of way in favor of the public.

■ Stokka's arguments relating to public policy and a trend toward expanding tort liability and eliminating "islands of immunity" would be more appropriately addressed to the Legislature than to the judiciary. Our function is to interpret the statute. The statute clearly limits the liability of landowners for injuries sustained by recreational users of land. The propriety of limiting landowners' liability for injuries sustained by recreational users is a matter lying within the province of the Legislature. "The justice, wisdom, necessity, utili-ty and expediency of legislation are questions for legislative, and not for judicial determination." Syllabus § 11, *Asbury Hospital v. Cass County*, 72 N.D. 359, 7 N.W.2d 438 (1943).

Stokka asserts that if Chapter 53–08 is construed to be applicable to land located within a public highway it violates Article I, Section 21 and Article I, Section 22 of the North Dakota Constitution. Those sections provide:

"*Section 21.* ... nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."

"*Section 22:* All laws of a general nature shall have a uniform operation."

"A statute is conclusively presumed to be constitutional unless it is clearly shown that the statute contravenes the state or federal constitution." *Hall GMC, Inc. v. Crane Carrier Co.*, 332 N.W.2d 54, 61 (N.D.1983). As we said in *So. Valley Grain Dealers Ass'n v. Bd. of County Com'rs*, 257 N.W.2d 425, 434 (N.D.1977):

"One who attacks a statute on constitutional grounds, defended as that statute is by a strong presumption of constitutionality, should bring up his heavy artillery or forego the attack entirely."

Stokka argues that application of Chapter 53–08 is unconstitutional because it would afford the owner of land in a public highway a special immunity against liability for ordinary negligence to those who come on the highway for recreational purposes, while others who injure recreational users of a highway would not have such immunity. She asserts as an example that a county would be immune from suit for ordinary negligence if a county snowplow operator negligently injured a snowmobiler crossing a highway, while a farmer negligently injuring such a snowmobiler with a truck would not enjoy such immunity. Stokka also argues that application of Chapter 53–08 to limit the liability of those responsible for conditions in a public way on the basis of ownership of land in the public way and an injured traveler's pur-

pose for being in the public way is unconstitutional because the law would not operate uniformly on people in like situations. She alleges that most travelers on a public highway are in the like situation of being in or on a moving vehicle that can be involved in accidents resulting from conditions, such as unmarked holes in the roadway, inadequate warnings about construction work in progress, reckless drivers, faulty equipment, or dangerous structures in the right of way, that are due to the negligence of other drivers or the negligence of those who own and manage the public highway.

Reference to abstract, factually dissimilar hypotheses, such as county immunity for ordinary negligence of a snowplow operator injuring a snowmobiler crossing a highway or liability of a farmer striking a snowmobiler with a truck, are not helpful. An automobile driver on a highway is not in a like situation with a snowmobiler on a ditch located within a right of way. An owner of land burdened with a right of way in favor of the public is not in a like situation with a county responsible for highway maintenance. That someone else in different circumstances might be immune from suit for ordinary negligence is not something we need consider. Stokka may assert only matters relating to her constitutional rights or immunities. *See State v. Gamble Skogmo, Inc.*, 144 N.W.2d 749 (N.D.1966). We are not persuaded that Stokka's arguments have clearly shown that the statute contravenes the North Dakota Constitution.

■ For the reasons stated, we conclude that the trial court did not err in determining that Chapter 53–08 is applicable, thereby precluding liability on the part of CCEC for ordinary negligence.

CCEC may still be liable, however, for a "[w]illful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." Section 53–08–05, N.D.C.C. In granting CCEC's motion for summary judgment, the trial court determined that "there is no competent admissible evidence upon which a jury could base an inference of willful or malicious con-

duct" and that "there are no genuine issues of material fact." We disagree.

Relying on *First National Bank of Hettinger v. Clark*, 332 N.W.2d 264 (N.D. 1983), CCEC asserts that Stokka failed to make the showing required by Rule 56, N.D.R.Civ.P., because Stokka produced no affidavits and cited no specific deposition testimony, other than referring to all the depositions. The trial court had "no legal obligation, judicial duty, or responsibility to search the record for evidence opposing the motion for summary judgment." *First National Bank of Hettinger v. Clark, supra*, 332 N.W.2d at 267. The trial court did, however, read all the depositions and we deem this argument to be without merit.

■ Summary judgment under Rule 56, N.D.R.Civ.P., should be granted only if, after taking the view of the evidence most favorable to the party against whom summary judgment is sought, it appears that there are no genuine issues as to material facts or conflicting inferences from the facts. *Albers v. NoDak Racing Club, Inc.*, 256 N.W.2d 355 (N.D.1977). Our task on appeal from summary judgment is to determine:

"Did the information available to the trial court, when viewed in a light most favorable to the opposing party, preclude the existence of a genuine issue as to any material fact and entitle the moving party to summary judgment as a matter of law?" *Johnson v. Haugland*, 303 N.W.2d 533, 537 (N.D.1981).

■ Negligence actions generally are not appropriate cases for summary judgment. *See Kirton v. Williams Electric Cooperative, Inc.*, 265 N.W.2d 702 (N.D. 1978). Gross negligence is ordinarily a question of fact for the jury unless the evidence is such that reasonable minds could reach but one conclusion. *Kunze v. Stang*, 191 N.W.2d 526 (N.D.1971); *Grenz v. Werre*, 129 N.W.2d 681 (N.D.1964). "Willful misconduct is also ordinarily considered as a jury question." *Ledford v. Klein*, 87 N.W.2d 345, 350 (N.D.1957). We believe the question of whether or not a

failure to guard or warn was willful is also a question of fact for the jury.

"In order to characterize an injury as having been willfully or wantonly inflicted, it is necessary to show knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; ability to avoid resulting harm by ordinary care and diligence in the use of the means at hand; and the omission of such care and diligence to avert threatened danger when to an ordinary person it must be apparent that the result likely would prove disastrous to another." [Citations omitted.] *Van Ornum v. Otter Tail Power Co.*, 210 N.W.2d 188, 202 (N.D.1973).

■ In our view, the information available to the trial court contained evidence which, when viewed in the light most favorable to Stokka, indicated that CCEC knew that unmarked guy wires posed a risk to snowmobilers; that the guy wire struck by Milton Stokka was known by CCEC to pose a risk to snowmobilers; that on February 9, 1972, a guy guard [2] was installed on the guy wire struck by Stokka, but was not present on December 19, 1981; that CCEC could avert harm to snowmobilers by installing guy guards; and that CCEC did not have an effective policy for determining where to install guy guards or to assure their continued presence if once installed. Thus, there is evidence from which a jury could infer that CCEC willfully failed to guard or warn against a dangerous condition, use, structure, or activity. "[S]ummary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2728.

For the reasons stated, we conclude that there are genuine issues of material fact precluding summary judgment and the summary judgment entered is therefore reversed and the case is remanded for trial.

GIERKE and MESCHKE, JJ., and PEDERSON, Surrogate Judge, concur.

PEDERSON, Surrogate Judge, sitting in place of LEVINE, Justice, disqualified.

VANDE WALLE, Justice, concurring specially.

I agree with much of what is written in the majority opinion. I am, however, concerned about the conclusion that there are genuine issues of material fact present which preclude summary judgment and require a reversal and remand for trial.

I believe we must assume that the Legislature intended something more than ordinary negligence when it enacted Section 53–08–05, N.D.C.C., permitting actions for "willful or malicious" failure to guard or warn against a dangerous condition, use, structure, or activity as an exception to Section 53–08–02, N.D.C.C. Section 53–08–02 provides that an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

I agree that negligence actions generally are not appropriate cases for summary judgment, but, as a result of legislative enactment, this is no ordinary negligence action. Furthermore, we have previously affirmed summary judgment in a negligence action when no genuine issue as to a material fact remained. See, e.g., *Weiss v. Bellomy*, 278 N.W.2d 119 (N.D.1979).

It appears to me that if we were to apply the usual definitions of "willful or malicious" to this matter, we would necessarily have to conclude that there is nothing in the record to reflect that Cass County Electric acted "willfully" or "maliciously," as those terms are usually understood, to cause the death of Milton Stokka, and thus there is no issue of material fact. The standard for willful conduct apparently established in *Van Ornum v. Otter Tail*

2. The type of guy guard involved is a bright yellow plastic guard attached to a guy wire that

acts as a visual warning of the guy wire's location.

*Power Company,* 210 N.W.2d 188 (N.D. 1973), quoted in the majority opinion, and reiterated in *Hart v. Kern,* 268 N.W.2d 136 (N.D.1978), is a more lenient standard than that applied in other jurisdictions. See, e.g., *Tranby v. Brodock,* 348 N.W.2d 458, 461 (S.D.1984), in which the court stated: "Willful and wanton misconduct means something more than negligence. It describes conduct which transcends negligence and is different in kind and characteristics. It is conduct which partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong.... Willful and wanton misconduct demonstrates an affirmative, reckless state of mind or deliberate recklessness on the part of the defendant."

The Legislature is presumed to know the less-stringent definition of "willful" adopted by this court in *Van Ornum.* See, e.g., *Horst v. Guy,* 219 N.W.2d 153 (N.D. 1974). I must therefore reluctantly agree that under such definition there are, as noted in the majority opinion, issues of material fact which make summary judgment improper. Were it not for the less-stringent definition of "willful" adopted by this court in *Van Ornum,* I would vote to affirm the trial court.