Diane DiMELLA, Plaintiff, Appellant,

v.

**GRAY LINES OF BOSTON, INC.,** and Herb Edmunds, Defendants, Appellants.

**United States of America,** Defendant, Appellee.

No. 87–1209.

United States Court of Appeals, First Circuit.

Heard Sept. 14, 1987.

Decided Jan. 13, 1988.

---

Roberta Thomas Brown with whom Blake J. Godbout, Boston, Mass., was on brief, for appellants.

Nicholas C. Theodorou, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., Acting U.S. Atty., Boston, Mass., was on brief, for defendant, appellee.

Before COFFIN, ALDRICH and TORRUELLA, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This case, in its present aspect a federal tort claim against the United States, 28 U.S.C. § 2671 *et seq.*, was heard in a somewhat bastard form, part way between a formal motion to dismiss for failure to state a claim, Fed.R.Civ.P. 12(b)(6), and, informally, a motion for summary judgment, not filed. While in exceptional instances this amalgam can be proper, *see King v. Williams Industries, Inc.*, 565 F.Supp. 321, 323 (D.Mass.1983), *aff'd per curiam*, 724 F.2d 240 (1st Cir.), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed. 2d 835 (1984), the case began badly, a motion to dismiss being thoroughly out of order, and never recovered. We reverse the dismissal.

Plaintiff appellant DiMella was injured while alighting from a sightseeing bus to visit the Charlestown Navy Yard, now a tourist attraction and home of the U.S.S. CONSTITUTION and the U.S.S. Constitution Museum. She sued the bus operator and its driver, and, by a separate action, the United States. The two cases were subsequently consolidated. After the government's motion to dismiss as against DiMella was allowed, the other defendants sought to file crossclaims against it late. Their motions were denied, and, plaintiff having settled and voluntarily dismissed as against those defendants, the principal question now before us is her appeal from the court's allowance of the government's motion.[1]

■ The government's reliance was upon the Massachusetts recreational use statute, Mass. G.L. c. 21, § 17C, which provides, in material part,

> An owner of land who permits the public to use such land for recreational purposes *without imposing a charge or fee therefor* ... shall not be liable to any member of the public who uses said land for the aforesaid purposes for injuries to person or property sustained by him while on said land in the absence of wilful, wanton or reckless conduct by the owner.... (emphasis supplied)

So far as the motion to dismiss was concerned, this reliance was quite inappropriate. The government having, by the F.T.

---

1. The would-be crossclaimants also appeal, but we assume that, basically, the court denied their motions on the ground that no cause of action had been stated by DiMella against the government. In light of our decision herein it may reconsider.

C.A., accepted tort liability in accordance with local law, the statute is an affirmative defense, to be pleaded by defendant, Fed.R. Civ.P. 8(c); *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), and could not be raised by a motion to dismiss unless the complaint itself supplied the basis. *See Quiller v. Barclays American/Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir.1984), *cert. denied,* 476 U.S. 1124, 106 S.Ct. 1992, 90 L.Ed.2d 673 (1986). Rather than doing so, the complaint went out of its way to assert that plaintiff was a "paying patron at the Charlestown Navy Yard." Even when plaintiff conceded the factual accuracy of a statement initiated in the government's memorandum,—that the "Yard is open to the general public free of charge,"—this did not, as we shall develop, blood-let the complaint as a matter of law.

At the hearing on the motion, instead of requesting a full record by way of a motion for summary judgment, the court, doubtless in the interests of expedition, decided to proceed on statements of counsel. This resulted in a record which, even if correct, was not necessarily complete. From the court's standpoint plaintiff lost simply because public entry into the Yard was free, "and there are many things to do there besides visit the museum (such as tour 'Old Ironsides')." How many other things, if, indeed, any, did not appear. Nor was there any contradiction of the possibility that an appreciable number of visitors, even plaintiff herself, might be interested only in the museum. The content of the museum was not shown; it might well attract scholars who had no other concern. The court, however, met all possible problems by saying that plaintiff's statement that "she was on her way to the museum, for which she would have had to pay an admission, ... cannot be determinative."

■ Before dealing with this aspect, we dispose of plaintiff's attempts to avoid the Massachusetts statute. We do not accept her claim that the statute does not apply to the United States since it fails to apply to, viz., exempt, Massachusetts governmental instrumentalities. Assuming this last to be so, and it is by no means clear, it is a false

issue. The extent that the federal government has accepted liability under the F.T.C. A. is "if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Whatever liability the Commonwealth may have chosen to assume for itself as a matter of governmental policy has no bearing on the liability of Massachusetts private persons, the standard the federal government accepted. For the opposite side of this coin, see *United States v. Muniz,* 374 U.S. 150, 164–65, 83 S.Ct. 1850, 1858–59, 10 L.Ed.2d 805 (1963); *Raymer v. United States,* 660 F.2d 1136 (6th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982).

Plaintiff's suggestion that the statute applies only to rural, and not to urban areas, calls for no response. It applies to all "land," the primary question being the imposition, vel non, of "a charge or fee therefor." Equally specious was plaintiff's contention, rejected by the court, that there is a difference between a landowner's inviting the public to enter, and merely permitting entry. The statute, whose purpose is to encourage free access to the public for recreational purposes, makes no such amorphous distinctions. Plaintiff cannot avoid the government's reliance upon the statute, so far as it goes.

■ Possible factual issues are another matter. Certain basic facts were accepted. Except for the area occupied by the Museum, which is a private entity that pays rent to the government (the National Park Service, the operator of the Yard), the Yard, and the U.S.S. CONSTITUTION herself, are open, free, to the public. The Museum charges an admission fee, but plaintiff had not purchased a ticket. The complaint itself does not mention the Museum, but her intent to go there was adequately asserted at the hearing. Her injury occurred on alighting from the bus, due to an allegedly unsafe foothold. While we assume this was the debouching spot for all, equally it was the necessary approach to the Museum.

The first question might be whether paying a fee for admission to the Museum fell

within the statute when it was collected by the Museum and only indirectly, by way of the rent, went to the government. The court did not rest its decision on this ground, nor would we. Was the rental nominal? Did it depend upon the receipts? Would the legislature have thought it proper for a "paying patron" of a rent-paying museum to fall into a hole without recourse? If there is no such distinction, should there be an unfavorable one against a person bound for the museum with the intention of paying admission as opposed to one who had already bought a ticket?

If plaintiff is to be equated with the latter, could it be that the government would not owe a safe passage to a visitor to a museum owned by it who already had paid a fee? Should this obligation be eliminated by the fact that other members of the public were given free use of the access property?

A contention that recognizing an obligation to paid museum visitors might discourage giving free use of the access property to members of the public generally, and hence violate the intent of the statute, would seem to put the cart before the horse. While the statutory intent is to encourage free dedication of recreational facilities, it is not to diminish liability for engagements for profit. If the government had chosen to donate the use of the land and building housing the museum, we would have a different case. But surely if the government obtains economic benefits as to some users, it should not escape normally attendant obligations because of its generosity to others. We would have no trouble with a case of a mere license to a concessionaire on a public park. *Cf. Jones v. United States*, 693 F.2d 1299 (9th Cir.1982). But here, even if the museum may not be the "dominant" attraction to the Yard, this should not be a case of majority rule. Clearly it has not been shown to be an insubstantial enterprise. Before rejecting plaintiff's allegation that she was, in effect, a "paying patron" entitled to due care, we should have a full record, and a full briefing of the possible legal issues.

Quite apart from short-cutting such questions, the court was hasty in dismissing plaintiff's allegations which, again, would deprive the government of the benefit of the statute, of "wilful, wanton or reckless conduct." Even if there were a burden on the plaintiff to allege this exception to the statute, it was fully satisfied by the statement that the United States "had prior knowledge of the highly dangerous and defective conditions then and there existing ... and with reckless disregard for the safety of the visiting general public, tourists, and the plaintiff" failed to repair or warn. This may, under the Massachusetts cases, be difficult to prove, but the court's dismissal of this language on the ground that there were no specific facts alleged was inconsistent with the modest pleading requirements of Fed.R.Civ.P. 8(a).

*Reversed and remanded.*