2006 ND 191

**Charles LEET and Janet Leet, Plaintiffs and Appellants,**

v.

**CITY OF MINOT, Defendant and Appellee.**

**No. 20060011.**

Supreme Court of North Dakota.

Sept. 13, 2006.

Kim E. Brust (argued) and Stephannie N. Stiel (appeared), Conmy Feste, Ltd., Fargo, N.D., for plaintiffs and appellants.

William E. Bergman, Olson & Burns P.C., Minot, N.D. for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Charles Leet and Janet Leet ("Leets") appealed from a summary judgment dismissing their complaint against the City of Minot and awarding costs and disbursements to Minot. Because we conclude the recreational use immunity statutes do not bar the Leets' claims, we reverse and remand for further proceedings.

I

[¶ 2] In May 2002, while Charles Leet was working at the Minot Auditorium, he was injured when a curtain divider system fell and a pipe struck him on the head. The auditorium is owned, operated, and maintained by Minot, and city employees had set up the curtain divider system. Charles Leet was at the auditorium to set up a booth for his employer, Experience Works, a vendor participating in the Salute to Seniors event, which was taking place the following day. The Minot Senior Coalition holds its "Salute to Seniors Celebration" annually, offering educational information as well as entertainment and information from area businesses and organizations that have booths at the event. Experience Works finds training and employment for people aged fifty-five and older by putting them in community service positions, and its booth at the event was to promote its services. Charles Leet was Experience Works' field operations coordinator, and he received workers compensation benefits for his injuries.

[¶ 3] In August 2003, the Leets sued Minot, alleging it was negligent in causing Charles Leet's injuries. Minot moved for summary judgment, arguing it was entitled to judgment as a matter of law under the recreational use immunity statutes in N.D.C.C. ch. 53–08. The Leets opposed Minot's motion, arguing the recreational use immunity statutes were not applicable to their action and, further, the recreational immunity defense had not been properly pled. The district court granted Minot summary judgment, ruling Minot was immune from suit under N.D.C.C. ch. 53–08.

II

[¶ 4] The Leets argue Minot was precluded from asserting the recreational immunity defense for the first time in its motion for summary judgment. Minot responds the district court did not abuse its discretion in considering the recreational use immunity defense because the Leets were not prejudiced by the assertion of the defense nor was there an allegation of prejudice to the district court.

[¶ 5] Recreational use immunity is generally recognized to be an affirmative defense. *See, e.g., Dan Nelson Constr., Inc. v. Nodland & Dickson*, 2000 ND 61, ¶ 33, 608 N.W.2d 267 (2000) (applying Wyoming law); *DiMella v. Gray Lines of Boston, Inc.*, 836 F.2d 718, 720 (1st Cir.1988); *Hollonbeck v. Torrey*, 171

F.R.D. 244, 245 (E.D.Ark.1997). Generally, the failure to plead an affirmative defense results in a waiver of the defense. *Hansen v. First American Bank & Trust,* 452 N.W.2d 770, 771 (N.D.1990). Rule 8(c), N.D.R.Civ.P., governing affirmative defenses, provides in relevant part:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

[¶ 6] We have, however, held that N.D.R.Civ.P. 8(c) must be read in conjunction with N.D.R.Civ.P. 15(a), governing amendment of pleadings. *Hansen,* 452 N.W.2d at 771–72. Rule 15(a), N.D.R.Civ.P., provides, in part:

> A party's pleading may be amended once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party's pleading may be amended only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

[¶ 7] Under N.D.R.Civ.P. 15(a), while leave to amend the pleadings is to be freely given when justice so requires, leave is not automatically granted. *See Bernabucci v. Huber,* 2006 ND 71, ¶ 28, 712 N.W.2d 323; *Hansen,* 452 N.W.2d at 772. The decision on a motion to amend a pleading is within the sound discretion of the district court and will not be overruled on appeal absent an abuse of discretion. *Bernabucci,* ¶ 28; *First Interstate Bank v. Rebarchek,* 511 N.W.2d 235, 243 (N.D. 1994). A district court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, when its decision is not the product of a rational mental process leading to a reasoned determination, or when it misinterprets or misapplies the law. *North Dakota Human Rights Coalition v. Bertsch,* 2005 ND 98, ¶ 11, 697 N.W.2d 1.

[¶ 8] Here, the district court said the affirmative defense could be raised for the first time in Minot's motion for summary judgment, in the absence of prejudice to the opposing party. The district court effectively granted a motion to amend by permitting the defense to be raised. Other courts have allowed assertion of affirmative defenses for the first time in response to a motion for summary judgment where there is no prejudice or surprise to the nonmoving party. *See Financial Timing Publ'ns, Inc. v. Compugraphic Corp.,* 893 F.2d 936, 944 n. 9 (8th Cir.1990); *Allied Chem. Corp. v. Mackay,* 695 F.2d 854, 855 (5th Cir.1983). The district court found the Leets had not alleged any prejudice, and no prejudice was apparent from the record.

[¶ 9] While Minot's summary judgment motion was timely under the district court's scheduling order, the Leets also argue Minot should be prevented from raising the recreational use immunity defense for the first time less than two

months before trial. The Leets assert all depositions in the case had been conducted and, therefore, they were precluded from asking questions in those depositions which could have addressed whether the statutes properly applied. The Leets claim Minot's delay in bringing the motion for summary judgment disadvantaged and prejudiced them. This Court, however, has previously held that mere delay does not necessarily result in prejudice to the litigant. *See Hansen,* 452 N.W.2d at 772–73 (no abuse of discretion where district court allowed defendant to amend its answer to raise various affirmative defenses on the day of trial where case had been pending for 13 months, both parties took depositions, participated in pre-trial motions, and were required to prepare for trial); *Bender v. Time Ins. Co.,* 286 N.W.2d 489, 491 (N.D.1979) (no abuse of discretion where district court allowed defendant to amend its answer to assert a statute of limitations defense more than 19 months after the complaint was originally filed).

[¶ 10] In addition to failing to make an affirmative showing of prejudice, the Leets did not request a continuance in their response to Minot's summary judgment motion under Rule 56(f), N.D.R.Civ.P., which permits a court to order a continuance for further discovery upon affidavit from the opposing party. Nonetheless, the trial in this case, which had initially been scheduled for March 2005, was eventually continued for eight months until November 2005. We conclude the district court did not act in an arbitrary, unreasonable, or unconscionable manner by permitting Minot to raise the affirmative defense of recreational use immunity for the first time in its motion for summary judgment.

### III

[¶ 11] The Leets argue the district court erred in concluding Charles Leet was using the Minot Auditorium for a recreational purpose and in granting Minot summary judgment based upon recreational use immunity. Minot counters that Charles Leet's presence at the auditorium the day before the Salute to Seniors event was for a recreational purpose because he was preparing for an event that was recreational and for the dissemination of information to seniors.

[¶ 12] Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *State ex rel. N.D. Housing Fin. Agency v. Center Mut. Ins. Co.,* 2006 ND 175, ¶ 8, 720 N.W.2d 425. Whether the district court properly granted summary judgment is a question of law that we review de novo on the record. *Id.* Summary judgment is appropriate if the issues in the case are such that the resolution of any factual disputes will not alter the result. *State ex rel. Stenehjem v. Freeeats. com, Inc.,* 2006 ND 84, ¶ 4, 712 N.W.2d 828. In reviewing an appeal from a summary judgment, we view the evidence in the light most favorable to the non-moving party and then determine if the district court properly granted summary judgment as a matter of law. *See Ertelt v. EMCASCO Ins. Co.,* 486 N.W.2d 233, 234 (N.D. 1992). The interpretation and application of a statute is a question of law, which is fully reviewable on appeal. *State ex rel. Stenehjem,* ¶ 5.

[¶ 13] The interpretation of N.D.C.C. ch. 53–08 is a question of law, which is fully reviewable on appeal. *See In re G.R.H.,* 2006 ND 56, ¶ 15, 711 N.W.2d 587; *Ash v. Traynor,* 2000 ND 75, ¶ 4, 609 N.W.2d 96. The primary purpose

of statutory construction is to ascertain the Legislature's intent. *Douville v. Pembina County Water Res. Dist.*, 2000 ND 124, ¶ 9, 612 N.W.2d 270. In ascertaining legislative intent, we first look to the words used in the statute, giving them their plain, ordinary, and commonly understood meaning. N.D.C.C. § 1–02–02. Where a statute's plain language is clear and unambiguous, the letter of the statute can not be disregarded under the pretext of pursuing its spirit because legislative intent is presumed clear from the face of the statute. N.D.C.C. § 1–02–05; *see In re G.R.H.*, ¶ 15; *County of Stutsman v. State Historical Soc'y*, 371 N.W.2d 321, 325 (N.D.1985). Where a statute's language is ambiguous, however, a court may resort to extrinsic aids, including legislative history, to interpret the statute. *County of Stutsman*, at 325. Additionally, this Court will construe statutes to avoid constitutional infirmities. *In re G.R.H.*, ¶ 15.

[¶ 14] North Dakota adopted its version of the recreational use immunity statutes in 1965 to protect landowners who opened their land for recreational purposes. 1965 N.D. Sess. Laws ch. 337 (codified at N.D.C.C. ch. 53–08). This Court has recognized that recreational use immunity statutes advance the important legislative goal of opening property to the public for recreational use in a manner that closely corresponds to the achievement of that goal. *See Olson v. Bismarck Parks & Recreation Dist.*, 2002 ND 61, ¶ 6, 642 N.W.2d 864. In *Olson*, ¶ 8, in the context of an equal protection challenge to the classification of nonpaying recreational users and other users, we briefly summarized the legislative history of the recreational use immunity statutes:

In 1993, the Legislature first amended the statutes by changing the language of N.D.C.C. § 53–08–05(1) from "[w]illful or malicious" to "[w]illful and malicious." 1993 N.D. Sess. Laws ch. 503, § 1. After

this Court abrogated sovereign immunity in *Bulman v. Hulstrand Const. Co., Inc.*, 521 N.W.2d 632 (N.D.1994), the Legislature again amended the statutes. In 1995, the Legislature changed the definition of "[l]and" in N.D.C.C. § 53–08–01 to include "all public and private land," and amended the definition of "[r]ecreational purposes" to its present form. 1995 N.D. Sess. Laws ch. 162, § 7. The amendment to the definition of land was intended to clarify that the statutes provide "a limitation of liability for all landowners, regardless of whether they are private or public." *Hearing on S.B. 2127 Before the Senate Agriculture Comm.*, 54th N.D. Legis. Sess. (Jan. 5, 1995) (testimony of Robert Olheiser, State Land Commissioner). In *Hovland v. City of Grand Forks*, 1997 ND 95, ¶¶ 8, 17, 563 N.W.2d 384, a majority of this Court ruled the *Fastow [v. Burleigh County Water Res. Dist.*, 415 N.W.2d 505 (N.D.1987) ] court's discussion of N.D.C.C. ch. 53–08 and political subdivisions was "dictum," and ruled the pre–1995 version of the recreational use immunity statutes did not apply to political subdivisions.

[¶ 15] Under N.D.C.C. § 53–08–02, "an owner of land owes no duty of care to keep the premises safe *for entry or use by others for recreational purposes,* or to give any warning of a dangerous condition, use, structure, or activity on such premises *to persons entering for such purposes.*" (Emphasis added.) Further, N.D.C.C. § 53–08–03 provides:

Subject to the provisions of section 53–08–05, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

1. Extend any assurance that the premises are safe for any purpose;

2. Confer upon such persons the legal status of an invitee or licensee to whom a duty of care is owed; or

3. Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.

[¶ 16] Under N.D.C.C. § 53–08–05, any willful and malicious failure to warn parties of any dangerous conditions will result in liability. *See Stokka v. Cass County Electric Co–op., Inc.*, 373 N.W.2d 911, 916 (N.D.1985) (discussing "willful conduct" definition). The dispositive issue here, however, is whether Charles Leet was present at the Minot Auditorium for "recreational purposes." Section 53–08–01(4), N.D.C.C., specifically defines "[r]ecreational purposes" to "include[ ] any activity engaged in for the purpose of exercise, relaxation, pleasure, or education."

[¶ 17] Prior to 1995, N.D.C.C. § 53–08–01(4) stated:

"Recreational purposes" includes, but is not limited to, any one or any combination of the following: hunting, fishing, swimming, boating, camping, picnicing, hiking, pleasure diving, nature study, water skiing, winter sports, and visiting, viewing, or enjoying historical, archaeological, geological, scenic, or scientific sites, or otherwise using land for purposes of the user.

*See* 1995 N.D. Sess. Laws, ch. 162, § 7. In 1995, the Legislature amended N.D.C.C. § 53–08–01(4), to make clear that the definition of "recreational purposes" "should be interpreted to cover *all* recreational activities." *Hearing on S.B. 2127 Before the House Agriculture Comm.*, 54th N.D. Legis. Sess. (Feb. 23, 1995) (written testimony dated Feb. 22, 1995, of Robert Olheiser, State Land Commissioner). The intent in proposing the amendment was not to limit "recreational purposes" to the previously listed activities, but to include any activity by the user for purposes of exercise, relaxation, pleasure, or education. *Id.*

[¶ 18] In our prior decision that the recreational use immunity statutes did not violate N.D. Const. art. I, § 21, and advanced the important legislative goal of opening property to the public for recreational use in a manner that closely corresponds to the achievement of that goal, we specifically discussed how the statutes created two classes of persons and treated them differently, i.e., nonpaying recreational users of another's land and all other persons using the land of another. *Olson*, 2002 ND 61, ¶¶ 14, 17, 642 N.W.2d 864. We recognized that "[t]he class distinction is based upon the location and nature of the injured person's conduct when the injury occurs.... The recreational use immunity statutes therefore protect landowners when others use the property without charge for their personal enjoyment, ... but continue to hold landowners responsible for their willful and malicious conduct." *Id.* ¶ 14 (citations omitted). Our decision in *Olson* and the plain meaning of the language that a landowner owes no duty to persons entering for "such [recreational] purposes," which is defined to include any activity engaged in for the purpose of exercise, relaxation, pleasure, or education, focus on the user's actions in entering the landowner's property. Based on our prior interpretations of those statutes and the plain language of the statute, we interpret our statutes to include consideration of the user's intent on the property.

[¶ 19] In granting summary judgment, the district court concluded Charles Leet was using the auditorium for recreational purposes at the time of his

injury on May 6, 2002, because the landowner's intent controls whether the recreational use statutes apply in this situation, not Charles Leet's intent in entering the auditorium. The court said, "[T]he fact that Charles was at the Auditorium in an employment capacity in behalf of one of the vendors at the 'Salute to Seniors Celebration' does *not* preclude a finding by the Court that Charles was a recreational user of the premises at the time. The 'Salute to Seniors Celebration' was an activity with a 'recreational purpose,' and Charles was there to further that recreational purpose." (Emphasis in original.) Although the landowner's intent is not irrelevant, we conclude the district court erred in holding the landowner's intent controlled in determining whether the recreational use immunity statutes applied.

[¶ 20] The proper analysis in deciding whether to apply the recreational use immunity statutes must include consideration of the location and nature of the injured person's conduct when the injury occurs. *See Herman v. City of Tucson,* 197 Ariz. 430, 4 P.3d 973, 978 (Ariz.Ct.App. 1999) (legislature did not clearly intend to render irrelevant the entrant's "purposes" for coming onto the land, even though the legislature obviously intended the statute to limit public landowners' liability to recreational users). Some courts have adopted a reasonable person standard for this determination. *See, e.g., Minnesota Fire & Cas. Ins. Co. v. Paper Recycling of La Crosse,* 2001 WI 64, ¶ 21, 244 Wis.2d 290, 627 N.W.2d 527 (applying a reasonable person standard to determine whether a property user's activity is recreational based on the totality of circumstances surrounding the activity); *see generally* 62 Am.Jur.2d *Premises Liability* § 144 (whether an injured person was engaged in a recreational activity for purposes of a recreational immunity statute is an objec-

tive one). The issue of the appropriate test for this determination has neither been briefed nor addressed by the parties on appeal. Because we are able to resolve this case on the specific facts already established, we decline to adopt a specific test here.

[¶ 21] Here, it is undisputed Charles Leet's purpose for being at the Minot Auditorium was to work for his employer who was a vendor at the Salute to Seniors event taking place the following day. While the spirit of the statute is to grant immunity to property owners who open their property to the public for recreational use, the plain language of the statute is not so broad as to include a person present on the property for purposes of the person's employment. The word "includes" is ordinarily not a term of limitation, but rather a term of enlargement. *See Amerada Hess Corp. v. State,* 2005 ND 155, ¶ 13, 704 N.W.2d 8; *Lucke v. Lucke,* 300 N.W.2d 231, 234 (N.D.1980). While the word "includes," as used in the context of N.D.C.C. § 53–08–01(4), suggests a broadening of the activities which are for "recreational purposes," we cannot conclude it encompasses *all* activities. *Cf. Iodence v. City of Alliance,* 270 Neb. 59, 700 N.W.2d 562, 564 (2005) (stating prior "broad" interpretations of statute's "recreational purpose" definition do not extend to *all* activities). Although Minot's intent in opening its auditorium may have been for a public recreational use, we conclude as a matter of law Charles Leet's presence at the Minot Auditorium on the day before the Salute to Seniors event was for employment purposes and not for a recreational purpose.

[¶ 22] Accordingly, we hold the district court erred in granting Minot summary judgment under the recreational use immunity statutes. Because we hold N.D.C.C. ch. 53–08 does not apply, we

need not address the Leets' remaining issues on appeal.

## IV

[¶ 23] We reverse the district court judgment and remand for further proceedings consistent with this opinion.

[¶ 24] Carol Ronning Kapsner, Dale V. Sandstrom, and Mary Muehlen Maring, JJ., concur.

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 25] I concur with Part II of the majority decision that the district court did not err allowing Minot to assert the recreational use immunity defense. I respectfully dissent from Part III regarding summary judgment because the majority erroneously concludes the Leets' claim is not barred by N.D.C.C. chapter 53–08. I also write separately to highlight this issue so that the Legislature might consider whether statutory clarification is warranted.

[¶ 26] This case requires us to apply the recreational use immunity statute to a situation most likely not contemplated by the Legislature: whether a landowner's immunity from liability extends to claims by a paid employee of a vendor preparing to participate in a public educational event. I part company with the majority because I believe they misread the statutes, misapply legislative intent, and reach a result antithetical to the Legislature's goal leading to adoption of recreational use immunity laws.

[¶ 27] The Legislature enacted the original statutes to encourage landowners to open their land for free recreational use by others. Majority opinion at ¶ 14 and *Olson v. Bismarck Parks and Recreation Dist.*, 2002 ND 61, ¶ 6, 642 N.W.2d 864. The legislation was titled an Act "Limiting Liability of Landowners." 1965 N.D. Sess. Laws ch. 337. The Act was "[t]o encourage landowners to make available to the public, land and water areas and other property for recreational purposes by limiting their liability toward users." *Id.* The scope of immunity was expanded in 1995 when the recreational use statutes were modified to cover public and private property, and to ensure the recreational purpose definition covered all recreational activities. *Olson*, ¶ 8. Subsequently, "[t]his Court has recognized that recreational use immunity statutes advance the important legislative goal of opening property to the public for recreational use in a manner that closely corresponds to the achievement of that goal." Majority opinion at ¶ 14 (citing *Olson*, ¶ 6). Importantly, the Legislature has never retreated from that goal by narrowing the scope of the recreational use immunity statutes.

[¶ 28] Despite the original expression of legislative intent, and despite later legislative changes and expanded expressions of intent to maintain open access to both private and public property, the majority focuses on the user's use of the property rather than the owner's purpose in making the property available. This is evident by that portion of the opinion stating, "Although the landowner's intent is not irrelevant, we conclude the district court erred in holding the landowner's intent controlled in determining whether the recreational use immunity statutes applied." Majority opinion at ¶ 19. Their conclusion builds on an earlier statement that "[t]he proper analysis in deciding whether to apply the recreational use immunity statutes must include consideration of the location and nature of the injured person's conduct when the injury occurs." *Id.* ¶ 20. By so ruling, the majority strays from the Legislature's expressly stated goal of gaining access to property by protecting owners

from liability. *See* 1965 N.D. Sess. Laws ch. 337.

[¶ 29] I do acknowledge that N.D.C.C. § 53–08–02 contains language about land available "for entry or use by others for recreational purposes" and the lack of a duty "to persons entering for such purposes." However, this section does not call for invention of a balancing test that looks to the entrant's use or intent, as is done by the majority. Instead, the Legislature has directed us to focus on the landowner when section 53–08–02 is read in the context of the other sections of chapter 53–08. When that is done, the rational interpretation is that the landowner has immunity from liability arising from recreational use that he, she, or it intended be conducted on the property. At the same time, section 53–08–02 should be read to say the owner has no immunity from claims arising out of injury to users who are on the property, by grant of authority from the owner, for other than recreational purposes.

[¶ 30] Under my interpretation, premises liability in the latter circumstance would be decided under the long-standing rule announced in *O'Leary v. Coenen*, 251 N.W.2d 746, 751 (N.D.1977) (adopting ordinary negligence principles for licensees and invitees). However, premises liability would not occur, absent willful and malicious failure to guard or warn, for injury to a recreational user or injury to a third party using the property in connection with activities reasonably related to the recreational use. Set to facts, this means a landowner has no liability to an injured recreational snowmobiler. *See Stokka v.*

*Cass County Elec. Co–op.*, 373 N.W.2d 911 (N.D.1985). Nor should that landowner incur liability if an uninjured snowmobiler has mechanical problems, calls for repairs without involvement of the landowner, and the repairman is injured on the property open for recreational use. Yet the majority's opinion reaches just the opposite result.

[¶ 31] The majority's result is obtained by dramatically changing focus to each user's purpose for being present on the property and away from the owner's act of opening the property for recreational use. This shift strips the owner of any ability to control liability and hands that control to each user—or in this case—a user's employee. I do not believe this is the result directed by plain words of the recreational use immunity statutes. I do not believe this result is supported by a fair assessment of the Legislature's express and implied intent. To the contrary, the majority's analysis and conclusion thwart, rather than carry out, the Legislature's goal by reducing, rather than maintaining or expanding, land available for recreational use. I would therefore affirm the district court judgment granting Minot summary judgment. Because the majority does not do so, I respectfully dissent from that part of its opinion.

[¶ 32] Daniel J. Crothers