2010 ND 69

Jacqueline K. SCHMIDT and Randall R. Schmidt, Plaintiffs and Appellants

v.

GATEWAY COMMUNITY FELLOW-SHIP, a North Dakota corporation, and North Bismarck Associates II, a North Dakota general partnership, Defendants and Appellees.

No. 20090047.

Supreme Court of North Dakota.

April 8, 2010.

Ariston Edward Johnson (argued) and David Del Schweigert (on brief), Bismarck, N.D., for plaintiffs and appellants.

Chris Ardon Edison, Bismarck, N.D., for defendant and appellee Gateway Community Fellowship.

Stephen W. Plambeck, Fargo, N.D., for defendant and appellee North Bismarck Associates II.

KAPSNER, Justice.

[¶ 1] Jacqueline and Randall Schmidt appeal from a summary judgment dismissing their personal injury action against Gateway Community Fellowship and North Bismarck Associates II after the district court decided Gateway Community Fellowship and North Bismarck Associates II were entitled to recreational use immunity because Jacqueline Schmidt entered a parking lot at a shopping mall for recreational purposes and she was not charged to enter the premises. The Schmidts argue there are factual issues about whether Jacqueline Schmidt entered the premises for recreational purposes and whether there was a charge for her entry to the premises. We reverse and remand.

I

[¶ 2] The Schmidts alleged Jacqueline Schmidt injured her right ankle on September 14, 2002, when she stepped in a hole in a paved parking lot on the north side of Gateway Mall shopping center in Bismarck while attending an outdoor automotive show and skateboarding exhibition sponsored by Gateway Community Fellowship, a non-profit church affiliated with the Church of God. At the time, Gateway Community Fellowship leased space for church services inside Gateway Mall from North Bismarck Associates II, the mall owner.

[¶ 3] On September 14, 2002, Gateway Community Fellowship sponsored an outdoor automotive show and skateboarding exhibition, the "Impact Auto Explosion", on a paved lot on the north side of Gateway Mall from 10 a.m. to 4 p.m., which was during the mall's regular Saturday business hours. According to Pastor Barry Saylor, the exhibition was held as a community outreach program to expose area youth to the teachings of Jesus Christ. Gateway Community Fellowship distributed videos and approximately 500 fliers during the exhibition, explaining the outreach program. The public was not charged an admission fee for entry to the exhibition, but Gateway Community Fellowship procured exhibition sponsors to defray costs. Additionally, the automotive show included several contests, and Gateway Community Fellowship charged car owners a registration fee to enter the contests. Gateway Community Fellowship had sponsored a similar event in 2001 which, according to Pastor Barry Saylor, was "extremely successful," and resulted in 1,200 more people at the mall than on a comparable day in 2000. The 2001 exhibition was on a parking lot on the south side of Gateway Mall, and according to Pastor Barry Saylor, the mall manager for North Bismarck Associates II directed Gateway Community Fellowship to hold the exhibition on the same weekend as Folkfest on the parking lot on the north side of Gateway Mall to increase visibility from Century Avenue in Bismarck. North Bismarck Associates II did not separately charge Gateway Community Fellowship for use of the parking lot for the 2002 exhibition. The parking lot on the north side of Gateway Mall had been part of a lumber yard of a previous mall tenant, and the area had holes and depressions in the concrete from the removal of posts that had formed part of an enclosure around the lumber yard. According to North Bismarck Associates II, the area of the parking lot used for the 2002 exhibition usually was roped off to be less accessible by the public.

[¶ 4] On September 14, 2002, Jacqueline Schmidt and her son were driving by Gateway Mall when they saw activity in the parking lot north of Gatewall Mall, and they stopped at the exhibition. According to Jacqueline Schmidt, they decided "it would be fun. They had skateboarders, and they had music, and it was a nice day out. . . . We were enjoying ourselves. We were watching the skateboarders. We were looking around, looking at the vehicles. It was a pleasant day out. It was very nice out, and we were just enjoying spending time together, looking at the activities." Jacqueline Schmidt and her son were not charged an admission fee for entry to the property or to the exhibition. According to her, she severely injured her right ankle as she walked across the parking lot and stepped in a posthole from the prior tenant's lumber yard.

[¶ 5] The Schmidts sued Gateway Community Fellowship and North Bismarck Associates II, alleging they negligently and carelessly failed to eliminate the holes in the parking lot or to warn exhibition attendees about the holes and were liable for the hazardous condition on

the premises. Gateway Community Fellowship and North Bismarck Associates II separately answered, denying they were negligent and claiming the Schmidts' action was barred by recreational use immunity under N.D.C.C. ch. 53–08. Gateway Community Fellowship and North Bismarck Associates II separately moved for summary judgment, arguing they were entitled to recreational use immunity under N.D.C.C. ch. 53–08, because the premises were used for recreational purposes and Jacqueline Schmidt was not charged to enter the premises.

[¶ 6] The district court granted summary judgment, concluding Gateway Community Fellowship and North Bismarck Associates II were entitled to recreational use immunity, because Jacqueline Schmidt entered the land for the recreational purpose of enjoying the exhibition with her son and she was not charged to enter the premises. The court also decided the statutory provisions for recreational use immunity were not unconstitutional as applied to the Schmidts' action.

## II

[¶ 7] Summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that reasonably can be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Kappenman v. Klipfel,* 2009 ND 89, ¶ 7, 765 N.W.2d 716; *Leet v. City of Minot,* 2006 ND 191, ¶ 12, 721 N.W.2d 398. Whether the district court properly granted summary judgment is a question of law that we review de novo on the record. *Kappenman,* at ¶ 7; *Leet,* at ¶ 12. Summary judgment is appropriate if the issues in the case are such that the resolution of any factual disputes will not alter the result. *Leet,* at ¶ 12. A party moving for

summary judgment must establish there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. *Kappenman,* at ¶ 7. In determining whether summary judgment is appropriate, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which reasonably can be drawn from the record. *Kappenman,* at ¶ 7; *Leet,* at ¶ 12. However, if the movant meets its initial burden of showing the absence of a genuine issue of material fact, the opposing party may not rest on mere allegations or denials in the pleadings, but must present competent admissible evidence by affidavit or other comparable means to show the existence of a genuine issue of material fact. *Kappenman,* at ¶ 7. The interpretation and application of a statute is a question of law, which is fully reviewable on appeal. *Leet,* at ¶ 12.

## III

[¶ 8] Under North Dakota law for premises liability, general negligence principles govern a landowner's duty of care to persons who are not trespassers on the premises. *See O'Leary v. Coenen,* 251 N.W.2d 746, 748–52 (N.D.1977) (abandoning common law categories of licensee and invitee for premises liability and retaining standard that owner owes no duty to trespasser except to refrain from harming trespasser in willful and wanton manner). Thus, a landowner or occupier of premises generally owes a duty to lawful entrants to exercise reasonable care to maintain the property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of injury, and the burden of avoiding the risk. *Id.* at 751. *See generally* 1 Norman J. Landau and Edward C. Martin *Premises Liability Law and Practice* § 1.06[2][a] (perm ed., rev. vol. 2009).

[¶ 9] Under that formulation, an owner or possessor of commercial property owes a duty to lawful entrants to exercise reasonable care to maintain the property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of injury, and the burden of avoiding the risk. *See Groleau v. Bjornson Oil Co.*, 2004 ND 55, ¶ 16, 676 N.W.2d 763; *Green v. Mid Dakota Clinic*, 2004 ND 12, ¶ 8, 673 N.W.2d 257. *See generally* 1 *Premises Liability Law and Practice*, at § 4.01[2][a] (explaining owner or possessor of commercial property must warn entrants of all known dangers, must inspect premises to discover hidden dangers, and must provide proper warning of known dangers); 62 Am. Jur. 2d *Premises Liability*, §§ 435, 439 (2005) (discussing commercial property owner's duty to customers and potential customers in shopping centers and malls). Similarly, a church or religious institution generally owes the same duty of care to lawful entrants on its premises. *See* 1 *Premises Liability Law and Practice*, at § 4.03[5]; 62 Am. Jur. 2d *Premises Liability*, at §§ 456–57.

[¶ 10] In 1965, the Legislature enacted recreational use immunity statutes to encourage landowners to open their land for recreational purposes by giving them immunity from suit under certain circumstances. 1965 N.D. Sess. Laws ch. 337 (codified at N.D.C.C. ch. 53–08); *Hearing on S.B. 312 Before Senate Agricultural Comm.*, 39th N.D. Legis. Sess. (Feb. 4, 1965); *Kappenman*, 2009 ND 89, ¶ 22, 765 N.W.2d 716; *Leet*, 2006 ND 191, ¶ 14, 721 N.W.2d 398; *Olson v. Bismarck Parks and Recreation Dist.*, 2002 ND 61, ¶ 6, 642 N.W.2d 864. *See generally* 1 *Premises Law and Practice*, at § 5.01[1]; 62 Am. Jur. 2d, *Premises Liability*, at §§ 125 et seq.

[¶ 11] Under N.D.C.C. § 53–08–02, "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." Section 53–08–03, N.D.C.C., also provides:

> Subject to the provisions of section 53–08–05, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:
>
> 1. Extend any assurance that the premises are safe for any purpose;
>
> 2. Confer upon such persons the legal status of an invitee or licensee to whom a duty of care is owed; or
>
> 3. Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.

At the time of the 2002 automotive show and skateboarding exhibition, N.D.C.C. § 53–08–05, provided there was no recreational use immunity for "[w]illful and malicious failure to guard or warn against a dangerous condition, use, structure, or activity," or for "[i]njury suffered in any case where the owner of land charges the person or persons who enter or go on the land other than the amount, if any, paid to the owner of the land by the state." *See* 2003 N.D. Sess. Laws ch. 453 (amending N.D.C.C. § 53–08–05 to current language).

[¶ 12] For purposes of the recreational use immunity statutes, N.D.C.C. § 53–08–01, provides:

> 1. "Charge" means the amount of money asked in return for an invitation to enter or go upon the land.
>
> 2. "Land" includes all public and private land, roads, water, watercourses, and ways and buildings,

structures, and machinery or equipment thereon.

3. "Owner" includes tenant, lessee, occupant, or person in control of the premises.

4. "Recreational purposes" includes any activity engaged in for the purpose of exercise, relaxation, pleasure, or education.

As originally enacted in 1965, N.D.C.C. § 53–08–01 defined "recreational purposes" to include, but not be limited to "any one or any combination of the following: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and visiting, viewing, or enjoying historical, archeological, geological, scenic, or scientific sites, or otherwise using land for purposes of the user." 1965 N.D. Sess. Laws ch. 337, § 1. In 1995 N.D. Sess. Laws ch. 162, § 7, the Legislature amended the definition of "recreational purposes" to its present form to cover "all recreational activities." *Hearing on SB 2127 Before the House Agricultural Comm.*, 54th N.D. Legis. Sess. (Feb. 23, 1995) (written testimony of Robert Olheiser, State Land Commissioner). The amendment was not intended to limit recreational purposes to the previously listed activities but to include any activity by the user for purposes of exercise, relaxation, pleasure, or education. *Id. See Leet*, 2006 ND 191, ¶ 17, 721 N.W.2d 398.

IV

[¶ 13] The Schmidts argue the district court did not view the evidence in the light most favorable to them and erred in finding, as a matter of law, that Jacqueline Schmidt's use of the land was recreational in character and that there was no charge for her to enter the land. They argue the court erred in failing to weigh the business purposes of Gateway Community Fellowship and North Bismarck Associates II in having the exhibition on the dangerous parking lot. They claim Gateway Community Fellowship's purpose was to increase membership, including tithing, and North Bismarck Associate's purpose was to increase foot traffic for its Gateway Mall tenants. The Schmidts also argue the court erred in applying the statutory language allowing recovery if there is a charge for use of the property. They claim the statutes do not grant immunity if the owner has charged any person in exchange for allowing the plaintiff upon the land. They also assert a factual issue exists in this case because, although Gateway Community Fellowship did not directly charge Jacqueline Schmidt to enter the exhibition, it procured sponsors for the exhibition and charged contestants a registration fee to enter the contests in the automotive show.

[¶ 14] The interpretation of the recreational use immunity statutes is a question of law, fully reviewable on appeal. *Kappenman*, 2009 ND 89, ¶ 21, 765 N.W.2d 716; *Leet*, 2006 ND 191, ¶ 13, 721 N.W.2d 398. Our primary objective in interpreting a statute is to ascertain the intent of the legislation. *Kappenman*, at ¶ 21; *Leet*, at ¶ 13. Words in a statute are given their plain, ordinary, and commonly understood meaning unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07.

[¶ 15] The parties do not dispute that both Gateway Community Fellowship and North Bismarck Associates II are "owners" of the premises for purposes of the plain language of the recreational use immunity statutes. *See* N.D.C.C. § 53–08–01(3) (defining owner to include "tenant, lessee, occupant, or person in control of the premises"). The issue here involves

the scope of "recreational purposes" in a case in which the property "owners" are a mall and a church and their purposes have recreational and nonrecreational components. This Court has acknowledged the "expansively broad language" of N.D.C.C. ch. 53–08, including the current definition of "recreational purposes." *Olson*, 2002 ND 61, ¶ 22, 642 N.W.2d 864 (Neumann, Justice concurring and joined by two other justices).

[¶ 16] In *Kappenman*, we considered the definition of "recreational purposes" in the context of an unimproved section line road. 2009 ND 89, ¶ 21, 765 N.W.2d 716. There a 13 year-old boy was killed when he drove an all terrain vehicle into a washout across an unimproved section line in a rural area as he was driving home after mowing a field and was looking for a spot to place a deer stand. *Id.* at ¶¶ 2–3, 28. The trial court granted summary judgment dismissing the parents' wrongful death action against a township and an adjacent property owner, concluding the boy's use of the section line was recreational in nature and the action was barred by recreational use immunity. *Id.* at ¶¶ 5, 19. We reversed the summary judgment against the township on that ground, concluding the action was not barred by the recreational use immunity statutes. *Id.* at ¶¶ 1, 30, 40. We explained our analysis required interpretation of the recreational use statutes and their applicability to unimproved section lines, which are public roads open to the public for travel. *Id.* at ¶¶ 21, 28. We acknowledged the definition of "land" in N.D.C.C. § 53–08–01(2) includes public roads, but we declined to construe the recreational use statutes to relieve governmental entities from their duties as supervisors of roads under all circumstances because public roads are primarily opened for purposes of travel, not recreation. *Kappenman*, at ¶ 23. We said a "section line is held out for purposes of travel rather than recreation, and is used for both recreational and nonrecreational purposes ... [and b]ecause the section line is made available to the public for nonrecreational travel ... the recreational use immunity statutes do not apply in this case." *Id.* at ¶ 28. We explained that conclusion was consistent with our caselaw applying the recreational use immunity statutes in which the injury occurred in a place that was opened for a recreational purpose and helped alleviate constitutional concerns associated with disparate treatment of individuals based upon the place of an injury and whether it occurred during recreational or nonrecreational activities. *Id.* at ¶ 29.

[¶ 17] In *Leet*, an individual was injured while at the Minot City Auditorium to set up a booth for his employer, a vendor participating in a "Salute to Seniors Celebration" at the Auditorium the following day. 2006 ND 191, ¶ 2, 721 N.W.2d 398. A majority of this Court reversed a summary judgment dismissal of the individual's personal injury action against the City of Minot, concluding the recreational use immunity statutes did not bar the individual's action. *Id.* at ¶¶ 1, 22–23. We said the owner's intent was not irrelevant, but did not control whether the recreational use immunity statutes applied. *Id.* at ¶ 19. We decided the proper analysis in deciding the application of those statutes included consideration of the location and nature of the injured person's conduct when the injury occurred. *Id.* at ¶ 20. We acknowledged the purpose of the statutes was to grant immunity to property owners who open their property to the public for recreational use, but we explained the language of the statutes was not so broad to include a person on the property for purposes of that person's employment. *Id.* at ¶ 21. We concluded "[a]lthough Minot's intent in opening its

auditorium may have been for a public recreational use, ... as a matter of law [the individual's] presence at the Minot Auditorium on the day before the Salute to Senior's event was for employment purposes and not for a recreational purpose." *Id.* at ¶ 21.

[¶ 18] In *Olson*, two individuals were injured while sledding free of charge on a hill on property owned, operated, and maintained by a public landowner, the Bismarck Parks and Recreation District. 2002 ND 61, ¶ 2, 642 N.W.2d 864. The district court rejected the individuals' state equal protection challenge to N.D.C.C. ch. 53–08 and granted the landowner's motion for summary judgment dismissal. *Id.* at ¶ 3. Relying on the undisputed facts that the individuals were engaged in a voluntary recreational use of the hill free of charge when they were injured, we held the recreational use immunity statutes did not violate state equal protection provisions because the statutes advanced the important legislative goal of opening property to the public for recreational use in a manner that closely corresponded to the achievement of that goal. *Id.* at ¶¶ 16–17.

[¶ 19] A common thread under our caselaw interpreting the recreational use immunity statutes is that the intent of both the owner and the user are relevant to the analysis and that the location and nature of the injured person's conduct when the injury occurs are also relevant. *Kappenman*, 2009 ND 89, ¶¶ 20, 28–29, 765 N.W.2d 716; *Leet*, 2006 ND 191, ¶¶ 18–20, 721 N.W.2d 398. Our caselaw effectively recognizes more than one purpose may be involved with the use of land. *See Kappenman*, at ¶ 28; *Leet*, at ¶¶ 19–20. Other jurisdictions have acknowledged that cases involving claims of recreational use immunity involve fact-driven inquiries in which nonrecreational uses or purposes may be mixed with recreational uses or purposes.

*See Atlanta Comm. for the Olympic Games, Inc. v. Hawthorne*, 278 Ga. 116, 598 S.E.2d 471, 473–76 (2004); *Anderson v. Atlanta Comm. for the Olympic Games, Inc.*, 273 Ga. 113, 537 S.E.2d 345, 348–50 (2000); *Crichfield v. Grand Wailea Co.*, 93 Hawai'i 477, 6 P.3d 349, 357–61 (2000); *Auman v. School Distr. of Stanley–Boyd*, 2001 WI 125, ¶¶ 11–13, 248 Wis.2d 548, 635 N.W.2d 762.

[¶ 20] In *Anderson*, 537 S.E.2d at 348, the Georgia Supreme Court recognized that application of the Georgia recreational use statute does not require the public to be on property for "sheer recreational pleasure" and that the statute may apply where commercial interests are mixed with recreational purposes. The court recognized the difficulties in cases where commercial and recreational aspects of the land were closely intertwined and adopted an objective balancing test from *Silingo v. Village of Mukwonago*, 156 Wis.2d 536, 458 N.W.2d 379, 382 (App.1990), to determine an owner's true purpose in making the land available free of charge to the public by requiring the trier of fact to consider all relevant social and economic aspects of the activity:

> [The test] requires that *all social and economic aspects* of the activity be examined. Relevant considerations on this question include, without limitation, the intrinsic nature of the activity, the type of service or commodity offered to the public, and the activity's purpose and consequence.

537 S.E.2d at 349. The court explained that balancing test did not preclude consideration of the user's subjective assessment of the activity, but did not make that subjective assessment controlling. *Id.* The court reversed a summary judgment in favor of the landowner and remanded for utilization of the balancing test to deter-

mine whether the recreational use statute provided the landowner immunity. *Id.*

[¶ 21] On remand, the trial court again granted the landowner summary judgment, ruling the recreational use statute provided the landowner immunity. *Atlanta Comm.*, 598 S.E.2d at 473. The Georgia Supreme Court again reversed the trial court and remanded, stating the purpose for which the public was permitted on the property involves the examination and weighing of evidence in those instances in which there exist both commercial and recreational aspects for the use of the property, and if there is conflicting evidence regarding the purpose, the trier of fact must resolve the conflict. *Id.* at 473–74. The court explained that even if there is no dispute about the activities on the land, the nature and extent of the mixed uses of the land may raise factual issues about the owner's purpose for directly or indirectly inviting or permitting a person to use the land without charge. *Id.* at 474. The court explained the issue for resolution by the trier of fact was whether the owner directly or indirectly invited or permitted any person to use the property for recreational purposes in light of any evidence the owner's purpose in allowing the public to be on the land free of charge was to derive, directly or indirectly, a pecuniary gain from business interests on the land. *Id.* The court said summary judgment for that issue was appropriate only when reasonable minds could not differ as to the conclusion. *Id.* The court recognized the inquiry was intensively fact driven and also elaborated on the type of evidence necessary to resolve a mixed use case where the land's commercial and recreational aspect were closely intertwined. *Id.* at 474–76. The court explained relevant considerations include whether the owner makes the property available to the public free of charge during regular business hours or at other times and whether the owner's financial arrangements with commercial interests that are both on and off the land indicate the property was made available for recreational or commercial purposes. *Id.*

[¶ 22] In *Auman*, 2001 WI 125, ¶ 12, 248 Wis.2d 548, 635 N.W.2d 762 (footnotes omitted), the Wisconsin Supreme Court said the line between recreational and non-recreational purposes was an intensely fact-driven inquiry and reiterated the test for resolving the issue:

> Although the injured person's subjective assessment of the activity is pertinent, it is not controlling. A court must consider the nature of the property, the nature of the owner's activity, and the reason the injured person is on the property. A court should consider the totality of circumstances surrounding the activity, including the intrinsic nature, purpose, and consequences of the activity. A court should apply a reasonable person standard to determine whether the person entered the property to engage in a recreational activity.

[¶ 23] Under N.D.C.C. ch. 53–08 and our caselaw interpreting those provisions, we decline to construe our recreational use statutes to necessarily provide a commercial landowner immunity where there is a recreational and commercial component to the landowner's operation. We conclude the rationale and balancing test from *Anderson, Atlanta Comm., Auman* and *Silingo,* provide persuasive authority for construing our statutes and assessing mixed use cases. We hold that balancing test applies to our recreational use immunity statutes in mixed use cases and that inquiry generally involves resolution of factual issues unless the facts are such that reasonable minds could not differ.

[¶ 24] Although there is evidence that North Bismarck Associates II opened an area of the mall parking lot that was not normally accessible to the public, there is also evidence that North Bismarck Associates II allowed its tenant to hold the exhibition on mall property on a Saturday during regular business hours to increase foot traffic for the Gateway Mall tenants. *Compare Piligian v. United States*, 642 F.Supp. 193, 194–96 (D.Mass.1986) (applying Virginia recreation use statutes and holding statute did not preclude defendant's duty of ordinary care to visitor who was injured when folding chair collapsed while visitor was sitting in chair to watch chorus perform after visitor had been shopping in a shopping concourse) *with Nitishin v. The Musicland Group, Inc.*, 20 Mass. L.Rptr. 347, 2005 WL 3627262 (Mass.Super.2005) (plaintiff injured while engaged exclusively in recreational walking at mall at 5:30 a.m. before mall opened for business; held facts fit within literal text of recreational use immunity statute). North Bismarck Associates II is a commercial enterprise that owns the Gateway Mall and increasing foot traffic is a commercial component to operation of the mall. *See Crichfield*, 6 P.3d at 361 (declining to construe recreational use immunity statute to create a universal defense to commercial establishments where there is a recreational and commercial component to the establishment's operation). Gateway Community Fellowship was a rent-paying tenant for Gateway Mall, which supports an inference that North Bismarck Associates II allowed Gateway Community Fellowship use of the parking lot as part of that landlord and tenant arrangement. There is also evidence that Gateway Community Fellowship held the exhibition as part of a youth outreach program to expose area youth to the teachings of Jesus Christ, which is consistent with the purpose of the church and not necessarily congruent with only a recreational purpose. Moreover, there is evidence Gateway Community Fellowship procured sponsors for the exhibition and charged contestants a registration fee to enter the car contests. Those facts do not constitute an "amount of money asked in return for an invitation to enter or go upon the land" under the literal language of N.D.C.C. § 53–08–01(1), but we believe those facts may be considered under the balancing test to determine whether there is immunity as a recreational purpose. Here, the district court focused solely on Jacqueline Schmidt's subjective purpose for entering the premises without considering the owners' purposes under the balancing test for mixed uses we adopt today. Although her subjective purpose is relevant, it is not controlling. *Leet,* 2006 ND 191, ¶ 19, 721 N.W.2d 398. *See Auman*, 2001 WI 125, ¶ 12, 248 Wis.2d 548, 635 N.W.2d 762. We conclude the facts in this case are not such that reasonable persons could reach one conclusion and there are disputed factual issues about whether North Bismarck Associates II and Gateway Community Fellowship are entitled to recreational use immunity. We therefore conclude resolution of the issue by summary judgment was inappropriate and a remand is necessary for the trier of fact to apply the balancing test to this mixed use case.

## V

[¶ 25] The Schmidts claim the district court erred in failing to consider evidence that Gateway Community Fellowship and North Bismarck Associates II willfully and maliciously failed to guard against a dangerous condition, which would preclude application of recreational use immunity to this case. *See* N.D.C.C. § 53–08–05(1). They argue there are disputed issues of fact about whether the defendants' conduct met that standard. However, the

Schmidts' complaint alleged the defendants engaged in negligent and careless conduct, and the Schmidts did not adequately raise an issue about willful and malicious conduct in the district court in their pleadings or otherwise. On this record, we decline to address Schmidts' argument about willful and malicious conduct. However, they are not precluded from making a motion to amend their complaint on remand.

## VI

[¶ 26] The Schmidts argue the district court erred in deciding the recreational use immunity statutes are constitutional as applied to the facts of their action. They claim the recreational use statutes violate state equal protection guarantees and argue the statutes do not have a close correspondence to the legislative goal of encouraging landowners to open their land to recreational users. In view of our interpretation of the recreational use immunity statutes and our disposition of this appeal, we need not address the Schmidts' equal protection argument.

## VII

[¶ 27] We reverse the summary judgment and remand for proceedings consistent with this opinion.

[¶ 28] MARY MUEHLEN MARING, J., and DONOVAN J. FOUGHTY, D.J., concur.

GERALD W. VANDE WALLE, C.J., concurs in the result.

[¶ 29] The Honorable DONOVAN JOHN FOUGHTY, D.J., sitting in place of CROTHERS, J., disqualified.

SANDSTROM, Justice, dissenting in part.

[¶ 30] I respectfully dissent.

[¶ 31] I am not convinced that a church should be denied the protection otherwise provided by law because one of the reasons for, or consequences of, its generosity is that others may be inspired to join in its good work or in the beliefs that inspire it.

[¶ 32] Nor do I believe that persons who lead "a godly life"—perhaps feeding the poor, providing free medical care, or providing "Good Samaritan" relief at the scene of an accident, all without expectation of remuneration, thinking that is what they are called to do—should be denied the protections otherwise provided by law because they believe or hope that others may be inspired by their example to join with them in doing good works. *See* N.D.C.C. § 32–03.1.

[¶ 33] Nor should a philanthropist lose the protections of law because the philanthropist hopes that an example of generosity will inspire others to become philanthropists.

[¶ 34] Nor should a service club doing good works be denied the protections of law because its members or leaders hope the example of selfless service may inspire others to join them in their work.

## I

[¶ 35] Although our statute is not as clear as we might like, the language focuses on the purpose of the person invited onto the property. *See* N.D.C.C. ch. 53–08.

[¶ 36] Section 53–08–02 of the North Dakota Century Code provides:

> Subject to the provisions of section 53–08–05, an owner of land owes no duty of care to keep the premises safe *for entry or use by others for recreational purposes* or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

N.D.C.C. § 53–08–02 (emphasis added). Under the words of the statute, it is the "entry or use" of the premises "by others" that is "for recreational purposes." The focus of this statute is on the users of the property. What was their purpose in entering and using the property? This focus is consistent with our holding in *Leet v. City of Minot*, 2006 ND 191, 721 N.W.2d 398, where we looked to the purpose for which the plaintiff was on the premises. In that case, even though others were on the premises for recreational purposes, the plaintiff was on the premises for business purposes. *Id.* at ¶ 21.

[¶ 37]   The plaintiffs here came onto the property for recreational purposes.

## II

[¶ 38]   I have found no case in the country denying recreational use immunity that would otherwise be available to clubs or religious organizations on the basis that hosted events included an aim of recruiting new members.

[¶ 39]   In *Bronsen v. Dawes County*, 272 Neb. 320, 722 N.W.2d 17 (2006), an attendee of a historical fur trade celebration stepped into a hole in a county courthouse lawn and fell down and broke her ankle and then brought a negligence action against the county and the nonprofit organization, Fur Trade Days, that hosted the event. The Supreme Court of Nebraska held the attendee was "picnicking," which was a recreational purpose, and thus the nonprofit organization was immune from liability. While part of the purpose of the celebration was likely to bring awareness and recruitment to Fur Trade Days, the Nebraska court made no mention of that aspect and simply held it was not erroneous for the district court to find the attendee's actions fell into the category of "picnicking," which constituted a recre-

ational purpose under the Recreation Liability Act.

[¶ 40]   Similarly, in *Maleare v. Peachtree City Church of Christ*, 213 Ga.App. 593, 445 S.E.2d 321 (1994), a church left its grounds and fixtures, including a playground, open to the general public free of charge. After a church member was severely injured when the swing she was sitting on broke, she brought suit against the church. The district court granted summary judgment to the church, finding it was granted immunity under the Recreational Property Act. The church member argued she was a "paying member" of the church, but the Georgia Court of Appeals denied that argument, because the playground was frequently and regularly used by the public, including non-members of the church. The Georgia Court of Appeals upheld the summary judgment and did not consider the possible argument that the church left its grounds open to raise awareness and increase recruitment to the church.

[¶ 41]   In *Thompson v. St. Mary's Immaculate Conception Church*, 1998 WL 13936 (Conn.Super.Ct.), the Superior Court of Connecticut denied a motion for summary judgment and found the defendant church would not be granted immunity from liability. In that case, the plaintiff attended a fund-raising fair hosted by the church, fell down, and was injured. The district court declined to grant the church recreational use immunity, because although the concerts were free, the fair also included games, rides, and amusements, which were not.

## III

[¶ 42]   I would not deny to the church the benefits of the recreational use immunity statute simply because a reason for or an effect of the church's permitting members of the public to enter for recreational

purposes may be that some participants might ultimately choose to join the church.

[¶ 43]   DALE V. SANDSTROM