2010 ND 102

**M.M. and Thomas Moore, Plaintiffs
and Appellants**

v.

**FARGO PUBLIC SCHOOL DISTRICT
NO. 1 and Eugenia Hart, Defendants
and Appellees.**

No. 20090121.

Supreme Court of North Dakota.

June 10, 2010.

Michael W. Unger (argued), Minneapolis, MN, and Craig E. Johnson (appeared), Fargo, N.D., for plaintiffs and appellants.

Ronald H. McLean (argued) and Jane L. Dynes (on brief), Fargo, N.D., for defendant and appellee Fargo Public School District No. 1.

Michael Geiermann, Bismarck, N.D., for defendant and appellee Eugenia Hart.

CROTHERS, Justice.

[¶ 1] M.M. and Thomas Moore appeal from a judgment dismissing their personal injury action against Fargo Public School District No. 1 ("District") and Eugenia Hart. We conclude the district court erred in ruling the recreational use immunity statutes, N.D.C.C. ch. 53–08, barred this personal injury action against the District. We reverse and remand for a new trial.

I

[¶ 2] In May 2004, M.M. was a 15–year–old ninth grade student at Discovery Middle School in Fargo. Hart was M.M.'s

history teacher. As part of the curriculum for Hart's history class, students could participate in 60s Day, which was the culmination of a unit of study on the decade of the 1960s. Participation in 60s Day, consisting of a series of skits and other activities performed by students, resulted in a small number of points added to a student's grade. Begun by Hart as an annual event in the late 1990s, 60s Day was scheduled for May 7, 2004.

[¶ 3] During the 60s Day event in 2002, a former student, D.H., participated by performing a stunt with his bike. Performing before an audience in the school's auditorium, D.H. "jump[ed]" his bike from the auditorium stage to the floor 3½ to 4 feet below. D.H. broke the left crank off of the bike during the stunt, but he was not injured. D.H.'s stunt, as well as the other performances that day, were video recorded, and D.H. was later provided a video of his stunt. D.H. was a friend of M.M.'s classmate, J.B. D.H. showed the video to J.B., and J.B. made a copy. According to J.B., Hart showed a video of the 2002 performances in her classroom as an example of 60s Day activities. J.B. decided to do the same stunt and approached M.M. about accompanying him so there "would be two people going off the stage at the same time." According to J.B., he asked Hart "if we could do the stunt, if we could ride our bikes off the stage and I didn't get a yes or no answer."

[¶ 4] On May 6, 2004, the day before 60s Day, J.B. and M.M. decided to practice the stunt after school in the school's auditorium. They had not received formal permission from Hart or school administrators to either practice or perform the stunt. Classes adjourned for the day shortly before 3:30 p.m., and teachers and administrators typically remained at the school until approximately 4 p.m. for supervision purposes. According to Hart, at approximately 3:30 p.m. she encountered M.M. who told her about the plans for the stunt, and she told him it was "not a good idea." Hart then left the school to pick up her vehicle which had been serviced.

[¶ 5] The main entrance door to the auditorium was locked, but J.B. and M.M. found a side door to the auditorium which had been left ajar to accommodate the movement of instruments and equipment for a band concert scheduled that evening. Sometime between 3:45 p.m. and 4 p.m., J.B. and M.M. brought their bikes into the auditorium and removed chairs on the stage so they could practice their jumps. J.B. practiced first and successfully completed the stunt. However, M.M. crashed, striking his head on the floor of the auditorium, causing serious and permanent injuries. Thomas Moore testified that, after Hart was informed of the accident, she went to the hospital and told him she knew the boys were going to practice the jump, "she could have stopped it, should have stopped it, but did not and she took total responsibility for the incident." Hart disputed Thomas Moore's description of their conversation at the hospital.

[¶ 6] In May 2007, M.M. and his father, Thomas Moore, brought this personal injury action against the District and Hart. They claimed the District was liable for the negligent actions of Hart, its employee, acting in the course of her employment. They also claimed Hart was separately and personally liable for M.M's injuries. Before trial, the district court granted the District's motion for summary judgment on the ground that the recreational use immunity statutes, N.D.C.C. ch. 53–08, shielded the District from any liability for the accident because it occurred on school property. The court further ruled no evidence had been presented to support a claim under the "willful and malicious" exception to recreational use immunity. The court granted Hart's motion for summary judg-

ment in part, concluding there was no evidence to support the factual allegation contained in M.M. and Thomas Moore's complaint that Hart "suggested" M.M. perform the bike stunt as part of the 60s Day activities. However, the court denied Hart's summary judgment motion in part, concluding a question of fact existed concerning the complaint's factual allegation that Hart failed to prevent M.M. from practicing the stunt. The jury returned a verdict finding Hart did not commit gross negligence, recklessness, or willful or wanton misconduct, and the court dismissed the action in its entirety.

## II

[¶ 7] M.M. and Thomas Moore argue the district court erred in ruling as a matter of law that the recreational use immunity statutes shielded the District from any liability in this case.

[¶ 8] Our standard of review for summary judgment is well-established.

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled

the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Lucas v. Riverside Park Condominiums Unit Owners Ass'n*, 2009 ND 217, ¶ 16, 776 N.W.2d 801 (quoting *Barbie v. Minko Constr. Inc.*, 2009 ND 99, ¶ 5, 766 N.W.2d 458).

[¶ 9] "Under North Dakota law for premises liability, general negligence principles govern a landowner's duty of care to persons who are not trespassers on the premises." *Schmidt v. Gateway Community Fellowship*, 2010 ND 69, ¶ 8, 781 N.W.2d 200. The same principles generally govern the liability of political subdivisions, which include school districts. *See Azure v. Belcourt Pub. Sch. Dist.*, 2004 ND 128, ¶ 4, 681 N.W.2d 816. Section 32–12.1–03(1), N.D.C.C., provides in relevant part:

"Each political subdivision is liable for money damages for injuries when the injuries are proximately caused by the negligence or wrongful act or omission of any employee acting within the scope of the employee's employment or office under circumstances in which the employee would be personally liable to a claimant in accordance with the laws of this state, or injury caused from some condition or use of tangible property, real or personal, under circumstances in which the political subdivision, if a private person, would be liable to the claimant."

Section 32–12.1–03(1), N.D.C.C., "provides two separate and independent grounds upon which a political subdivision can be held liable for injuries: (1) a political subdivision can be liable for injuries caused by some condition or use of property in the same manner as a private person, and (2) a political subdivision can be liable for injuries caused by the negligence or wrongful act or omission of an employee acting with-

in the scope of the employee's employment." *Fastow v. Burleigh County Water Res. Dist.*, 415 N.W.2d 505, 509 (N.D. 1987).

■ [¶ 10] The recreational use immunity statutes, N.D.C.C. ch. 53–08, provide an exception to political subdivision liability under N.D.C.C. § 32–12.1–03(1). Section 53–08–02, N.D.C.C., provides that "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." Section 53–08–03, N.D.C.C., further states:

"Subject to the provisions of section 53–08–05, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

1. Extend any assurance that the premises are safe for any purpose;

2. Confer upon such persons the legal status of an invitee or licensee to whom a duty of care is owed; or

3. Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons."

For purposes of N.D.C.C. ch. 53–08, "[l]and" is defined as including "all public and private land, roads, water, watercourses, and ways and buildings, structures, and machinery or equipment thereon." N.D.C.C. § 53–08–01(2). An "[o]wner" is defined as including a "tenant, lessee, occupant, or person in control of the premises." N.D.C.C. § 53–08–01(3). "Recreational purposes" are broadly defined as including "any activity engaged in for the purpose of exercise, relaxation, pleasure, or education." N.D.C.C. § 53–08–01(4). However, N.D.C.C. ch. 53–08 "does not limit in any way any liability that otherwise exists for . . . [w]illful and malicious failure to guard or warn against a dangerous condition, use, structure, or activity." N.D.C.C. § 53–08–05(1). Therefore, unless a political subdivision, through its employees, has committed a "[w]illful and malicious failure to guard or warn against a dangerous condition, use, structure, or activity," *id.*, "the political subdivision is not liable for injuries to a nonpaying recreational user of the property." *Fastow*, 415 N.W.2d at 509.

[¶ 11] In this case, the district court concluded that the location of the accident, Discovery Middle School, fell within the definition of "land" in N.D.C.C. § 53–08–01(2); that M.M.'s practice jump was for an educational purpose, the school-related 60s Day, and consequently qualified as a "recreational purpose[ ]" under N.D.C.C. § 53–08–01(4); and that the recreational use immunity statutes therefore shielded the District from liability except for a "[w]illful and malicious failure to guard or warn against a dangerous condition, use, structure, or activity" under N.D.C.C. § 53–08–05(1). The court concluded M.M. and Thomas Moore had presented no evidence that Hart, the District, or any of its agents or employees acted willfully and maliciously. The court also rejected M.M. and Thomas Moore's argument that their claims based on negligent supervision are separate and distinct and not subject to recreational use immunity because the "alleged negligent or wrongful acts of Hart all relate to [M.M.'s] use of the property."

■ [¶ 12] "This Court must 'harmonize statutes to avoid conflicts between them.'" *In re Midgett*, 2007 ND 198, ¶ 12, 742 N.W.2d 803 (quoting *Stephenson v. Hoeven*, 2007 ND 136, ¶ 14, 737 N.W.2d 260). Resolution of the dispute in this case requires that we harmonize the political subdivision liability statutes, N.D.C.C.

ch. 32–12.1, and the recreational use immunity statutes, N.D.C.C. ch. 53–08. In *Kappenman v. Klipfel*, this Court explained:

> "The interpretation of a statute is a question of law. *Baukol Builders, Inc. v. County of Grand Forks*, 2008 ND 116, ¶ 22, 751 N.W.2d 191. This Court's primary objective in interpreting a statute is to ascertain legislative intent. *Id.* Words of a statute are given their plain, ordinary, and commonly understood meaning unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, 'the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit.' N.D.C.C. § 1–02–05. If the language of a statute is ambiguous, however, a court may resort to extrinsic aids to interpret the statute. N.D.C.C. § 1–02–39. Statutes must be construed to avoid absurd and ludicrous results. *County of Stutsman v. State Historical Soc'y*, 371 N.W.2d 321, 325 (N.D.1985)."

2009 ND 89, ¶ 21, 765 N.W.2d 716 (quoting *State v. Wetzel*, 2008 ND 186, ¶ 4, 756 N.W.2d 775).

[¶ 13] A majority of this Court has said that " '[t]he proper analysis in deciding whether to apply the recreational use immunity statutes must include consideration of the location and nature of the injured person's conduct when the injury occurs.' " *Kappenman*, 2009 ND 89, ¶ 20, 765 N.W.2d 716 (quoting *Leet v. City of Minot*, 2006 ND 191, ¶ 20, 721 N.W.2d 398); *see also Schmidt*, 2010 ND 69, ¶ 17, 781 N.W.2d 200. In *Kappenman*, this Court focused on the location of an accident in concluding the recreational use immunity statutes did not shield a township from liability. *Kappenman*, at ¶¶ 28, 30. The accident, in which a boy driving an all terrain vehicle was killed, occurred on an unimproved section line. *Id.* at ¶ 2. Under state law, section lines were declared to be " 'public roads open for public travel.' " *Id.* at ¶ 21 (quoting N.D.C.C. § 24–07–03). This Court stated, "[T]he analysis must begin with an interpretation of the recreational use immunity statutes and their applicability to public roads open to public travel." *Kappenman*, at ¶ 21. Acknowledging that the definition of "land" in N.D.C.C. § 53–08–01(2) specifically included the term "roads," this Court said "we do not believe the legislature intended to relieve government entities of their duties as supervisors of roads under all circumstances because public roads are primarily opened for purposes of travel, not recreation." *Kappenman* at ¶ 23. This Court concluded, because the "section line is held out for purposes of travel rather than recreation, and is used for both recreational and nonrecreational purposes, . . . we conclude the recreational use immunity statutes do not apply in this case." *Id.* at ¶ 28. Considering the location of the accident, the purposes of the recreational use immunity statutes, and the laws governing schools and school students, we come to the same conclusion that the recreational use immunity statutes do not apply in this case.

[¶ 14] Since their enactment in 1965, the recreational use immunity statutes have been intended "to encourage landowners to open their land for recreational purposes by giving them immunity from suit under certain circumstances." *Schmidt*, 2010 ND 69, ¶ 10, 781 N.W.2d 200; *see also Kappenman*, 2009 ND 89, ¶ 22, 765 N.W.2d 716; *Leet*, 2006 ND 191, ¶ 14, 721 N.W.2d 398; *Olson v. Bismarck Parks & Recreation Dist.*, 2002 ND 61, ¶ 6, 642 N.W.2d 864. Virtually all states have some form of recreational use immunity provisions, which seek " 'to reduce the

growing tendency of landowners to withdraw land from recreational access by removing the risk of gratuitous tort liability that a landowner might run unless he could successfully bar any entry to his property for enumerated recreational uses.'" *Olson*, at ¶ 6 (quoting 62 Am.Jur.2d *Premises Liability* § 119 (1990) (footnote omitted)). In North Dakota the recreational use immunity statutes do not "encourage" schools to open their doors to students for the "recreational purposes" of "education." N.D.C.C. § 53–08–01(4).

[¶ 15] Article VIII, § 2 of the North Dakota Constitution directs the Legislature to "provide for a uniform system of free public schools throughout the state," and the Legislature has done so. *See* N.D.C.C. § 15.1–06–01. The Legislature has provided for the length of the school calendar, *see* N.D.C.C. § 15.1–06–04, and for curriculum and testing requirements. *See* N.D.C.C. ch. 15.1–21. The Legislature has imposed health, safety, and sanitation requirements on schools and has imposed inspection requirements. *See* N.D.C.C. §§ 15.1–06–09, 15.1–06–10, 15.1–06–11, 15.1–06–12 and 15.1–06–13. The statutory scheme emphasizes that "education of students" is a school's overriding purpose. N.D.C.C. § 15.1–06–14. Children, through the compulsory school attendance laws, are required to attend an approved school, *see* N.D.C.C. §§ 15.1–20–01 and 15.1–20–02, and persons having responsibility for children are subject to penalties if they fail to ensure a child's attendance. *See* N.D.C.C. § 15.1–20–03. This Court has also approved the following statement of duties schools owe their students:

> "A school must exercise ordinary care to keep its premises and facilities in reasonably safe condition for use of minors who foreseeably will make use of premises and facilities.

> "Schools are under a duty to insure the safety of their students during playground activities as well as a duty to properly maintain the premises.

> "The school owes to its children to exercise such care of them as a parent of ordinary prudence would observe in a comparable circumstance.

> "The duty of care owed a child is greater than that owed an adult against unreasonable risk of injury. The standard of care used in dealing with adults, however, is not considered adequate for those entrusted with the care of children. The degree of due care increases with the immaturity of the child.

> "While an adult is held to the standard of a reasonable man an infant is held to a standard of care which would be exercised by the ordinarily prudent child of his own age, capacity, intelligence and experience. Negligence, as applied to a minor child, is the doing of that which an ordinarily prudent person of the age, intelligence, experience and capacity of such child would not do under the same or similar circumstances, or the failure to do that which such a person would do under the same or similar circumstances."

*Besette v. Enderlin Sch. Dist. No. 22*, 310 N.W.2d 759, 763 (N.D.1981).

[¶ 16] Numerous courts have refused to apply recreational use immunity statutes to bar suits against school districts brought by students injured on school grounds during the school day. For example, in *Bauer v. Minidoka Sch. Dist. No. 331*, 116 Idaho 586, 778 P.2d 336, 337 (1989), the plaintiff student broke his leg when he tripped over sprinkler pipes while playing football on the grounds of his junior high school shortly before classes began. The trial court had granted summary judgment dismissal of the action, concluding under Idaho's broadly-worded

recreational use immunity statutes the school district owed the plaintiff no duties. *Id.* The Idaho Supreme Court reversed, explaining:

"Here, Tregg was a public school student participating in a game being played at school as the school day was getting underway. Tregg was not merely a recreational user of the school premises, he was there as a student entitled to the protection of the district. This relationship is crucial to our decision in holding that the recreational use statute does not apply to this case.

"As Justice Spear said in dissenting in *Murphy v. Pocatello School District # 25,* 94 Idaho 32, 42, 480 P.2d 878, 888 (1971): 'The role of the state to children in school is a parental one often being described as one in *loco parentis.*' The relationship of a student to a school district is exemplified by the statutory duty that the board of trustees of a school district has '[t]o protect the morals and health of the pupils.' I.C. § 33–512(4) (Supp. 1988). In another context this Court has noted that school districts are required to adopt safety rules and regulations concerning the transportation of pupils to school 'to impact primarily upon the safety and adequate protection of the pupils.' *Quincy v. Joint School Dist. No. 41,* 102 Idaho 764, 766, 640 P.2d 304, 306 (1981). This special relationship that a student has to a school district would be substantially impaired if the recreational use statute were applied to injuries children suffered while on school premises as students. Students would then bear the risk of defects in school premises.

"Tregg was not the type of recreational user contemplated in the recreational use statute. He was a public school student who came to school early before classes began to play football with his classmates. If he had come to the school grounds to play a game of football that was not organized or sanctioned by the school on a day when school was not in session, we would have no trouble in applying the statute to limit the liability of the district. Nor would we have any difficulty in applying the statute, if he had come to the school grounds on a school day to play a game of football that was not organized or sanctioned by the school before the faculty and other students who were not involved in the game began arriving. The problem we have in applying the recreational use statute to these facts is that Tregg arrived to play football at the very time that the school was beginning its operations for the day, although no classes had begun. He was not just a member of "the public" referred to in the recreational use statute. He was there as a student to begin the school day with a game of football. Some students may come early to talk to their teachers, some to visit with their classmates, some to study and others to participate in informal activities such as football. All of these are legitimate activities within the scope of a student's special relationship with the school.

"It would be entirely artificial to apply the recreational use statute to activities of students up to the moment the first bell rings and classes begin. No purpose would be served by drawing this line for application of the recreational use statute. When the principal is present, some faculty members are on duty and students have arrived, the school day has begun and the recreational use statute has no application to a student who is injured on the school grounds."

*Bauer,* at 338–39.

[¶ 17] Other courts have come to similar conclusions. *See, e.g., McIntosh v. Omaha Pub. Sch.,* 249 Neb. 529, 544 N.W.2d 502, 508 (1996), *overruled on other*

grounds by *Bronsen v. Dawes County*, 272 Neb. 320, 722 N.W.2d 17 (2006) (student who was injured while participating in after school spring football clinic on school campus was not barred by recreation liability act from bringing suit for his injuries; "Clearly, a student participating in a clinic sponsored by his school's athletic program does not fall under the category of recreational use of land open to members of the public without charge."); *Alter v. City of Newton*, 35 Mass.App.Ct. 142, 617 N.E.2d 656, 661 (1993) (city operated school was not immune from liability under recreational use statute for injury to student struck by lacrosse ball on school grounds because "plaintiff was not just a member of the public, but was ... a student to whom [the city] owed a duty of care;" "That the accident occurred at the end of the school day while the plaintiff was waiting for her father does not absolve the city from liability. Hers was a legitimate use of the premises within the scope of a student's traditional relationship with her school."); *Auman v. School Dist. of Stanley–Boyd*, 248 Wis.2d 548, 635 N.W.2d 762, 770 (2001) (recreational immunity statute did not immunize school district for student's injury on school grounds during recess; compulsory school attendance law required student's attendance at school, participation in recess was mandatory, and "[n]o reason exists to immunize school districts from liability for not exercising reasonable care in the maintenance of school facilities or supervision of school children during regular school hours"); *cf. Morales v. Town of Johnston*, 895 A.2d 721, 730 (R.I.2006) (student athlete injured in away game played on field owned by town was not barred by recreational use statute from bringing suit against town; "The clear intent of the recreational use statute is to shield landowners against liability to those who come upon the owner's land for recreation; a student athlete participating in an organized sport on a designated ath-

letic field does not fall within its provisions."); *Home v. North Kitsap Sch. Dist.*, 92 Wash.App. 709, 965 P.2d 1112, 1117 (1998) (recreational use statute did not immunize school district from suit for coach's injury suffered during away game on school district's football field; "it is undisputed that North Kitsap was not holding the football field open for use by members of the public when Home was injured"); *see also* 78 C.J.S. *Schools and School Districts* § 683 (2008) ("a child who suffers injuries while on school premises as a student ... is not a recreational user within the meaning of such a statute" (footnote omitted)); *but see Lanning v. Anderson*, 22 Kan.App.2d 474, 921 P.2d 813, 820–21 (1996) (stating that the recreational use exception eliminates the duty of ordinary care owed by teachers and school districts to properly supervise students and provide a safe environment while under their care).

[¶ 18] When harmonizing N.D.C.C. § 32–12.1–03 and N.D.C.C. ch. 53–08, we agree with those courts that refuse to apply recreational use immunity statutes to bar suits by students injured on school grounds during the school day. As in *Kappenman*, 2009 ND 89, ¶ 23, 765 N.W.2d 716, we do not believe the Legislature intended to relieve school districts of duties of care owed their students, who are mandated by law to attend their schools, based on a statutory scheme designed to encourage landowners to make available to the public land and water areas for recreational purposes. *See Olson*, 2002 ND 61, ¶ 6, 642 N.W.2d 864. We do not construe statutes in a manner that leads to " 'absurd and ludicrous results.' " *Kappenman*, at ¶ 21, (quoting *Wetzel*, 2008 ND 186, ¶ 4, 756 N.W.2d 775). Although M.M.'s accident occurred shortly after classes had ceased for the day, the evidence presented of the number of school administrators and teachers who responded to J.B.'s request

for help and rendered assistance to M.M. in the auditorium after the accident demonstrates the school day had not come to an end. *See Bauer,* 778 P.2d at 339; *Alter,* 617 N.E.2d at 661. We also recognize the allegations that M.M. and J.B. essentially "snuck" into the auditorium to practice the bike stunt for 60s Day. The District may have several defenses available based on this allegation, but we conclude immunity from suit based on the recreational use immunity statutes is not one of those defenses.

[¶ 19] We conclude the district court erred as a matter of law in ruling the recreational use immunity statutes barred M.M. and Thomas Moore's personal injury action against the District. Because the District can be liable under the doctrine of respondeat superior for Hart's "alleged negligence, wrongful act, or omission ... occurring within the scope of [her] employment" under N.D.C.C. § 32–12.1–04(1), *see Binstock v. Fort Yates Pub. Sch. Dist. No. 4,* 463 N.W.2d 837, 842 (N.D.1990), we reverse the summary judgment and remand for trial against the District.

### III

[¶ 20] M.M. and Thomas Moore argue the district court erred in granting partial summary judgment against them dismissing a factual allegation in their complaint that Hart had "suggested that [M.M.] and others could perform for a required classroom skit by imitating the daredevil actions of Evel Knievel through use of a bicycle." The district court granted summary judgment dismissal of this factual allegation because M.M. and Thomas Moore "presented absolutely no evidence that Hart suggested [M.M.] jump his bicycle from the stage to the floor."

[¶ 21] Hart's motion is more properly described as a motion in limine to prohibit the introduction of evidence relating to Hart's alleged "suggest[tion]," rather than a partial summary judgment motion to dismiss factual allegations in a complaint. Parsing the factual allegations in a complaint through summary judgment proceedings is inappropriate in a negligence case because " '[w]hether a certain act or failure to act is negligence depends upon the facts and circumstances of each particular case.' " *Kreidt v. Burlington N. R.R.,* 2000 ND 150, ¶ 10, 615 N.W.2d 153 (quoting NDJI—Civil C–2.05). "We review a district court's decision on a motion in limine for an abuse of discretion." *State v. Buchholz,* 2006 ND 227, ¶ 7, 723 N.W.2d 534. A court abuses its discretion "by acting in an arbitrary, unreasonable, or unconscionable manner." *State v. Bjerklie,* 2006 ND 173, ¶ 4, 719 N.W.2d 359. Under either summary judgment standards or abuse of discretion standards, we conclude the district court erred in granting Hart's motion.

[¶ 22] The district court appears to have based its decision on the lack of evidence that Hart affirmatively stated the students could perform the bike stunt. However, the word "suggest" is defined as "to mention *or imply* as a possibility." *Merriam Webster's Collegiate Dictionary* 1249 (11th ed. 2003) (emphasis added). "Imply" is defined as "to involve or indicate by inference, association, or necessary consequence rather than by direct statement." *Id.* at 624. A person can "suggest" without making a statement. Here, M.M. and Thomas Moore unsuccessfully attempted to introduce evidence that Hart had given prior approval to D.H. to perform the bike stunt in 2002, that D.H. had rehearsed in the auditorium the day of his performance and that a video of the 2002 performance was shown in Hart's history class as an example of what could be done as part of 60s Day activities. This evidence, as well as other evidence that was excluded, certainly could be viewed as implying the bike stunt was a permissible

activity for 60s Day. We conclude the district court erred in granting Hart's motion. We reverse the judgment and remand for further proceedings against Hart.

## IV

[¶ 23] We consider issues raised that are likely to arise on remand. *See Grager v. Schudar*, 2009 ND 140, ¶ 21, 770 N.W.2d 692. M.M. and Thomas Moore argue the district court erred in failing to give their requested jury instructions.

[¶ 24] "Jury instructions must fairly inform the jury of the applicable law." *Erickson v. Brown*, 2008 ND 57, ¶ 46, 747 N.W.2d 34. A "district court is not required to instruct the jury in the exact language sought by a party if the court's instructions correctly and adequately inform the jury of the applicable law." *Grager*, 2009 ND 140, ¶ 6, 770 N.W.2d 692. "On appeal, we review jury instructions as a whole, and if they correctly advise the jury of the law, they are sufficient although parts of them, standing alone, may be erroneous and insufficient." *Flatt v. Kantak*, 2004 ND 173, ¶ 23, 687 N.W.2d 208.

[¶ 25] M.M. and Thomas Moore requested that the terms "willful misconduct" and "wanton act" be defined separately, and offered an instruction on "willful misconduct" based on NDJI—Civil C–2.12 and on "wanton act" based on a Colorado court decision and *Black's Law Dictionary*. Instead, the district court defined the terms together:

> " 'Willfull and wanton misconduct' requires knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; an ability to avoid the resulting harm by ordinary care and diligence in the means at hand; and the omission of such care and diligence to avert threatened danger when to an ordinary person it must be apparent that the result would likely

prove disastrous to another. Willfull and wanton actions are reckless, heedless, malicious; characterized by extreme recklessness or foolhardiness; recklessly disregardful of the rights or safety of others or of consequences."

[¶ 26] The district court's instruction is essentially taken verbatim from this Court's definition of "[w]illful and wanton actions" in *Smith v. Kulig*, 2005 ND 93, ¶ 12, 696 N.W.2d 521, which in turn combined definitions of the term found in *Nelson v. Gillette*, 1997 ND 205, ¶ 27, 571 N.W.2d 332, and *Van Ornum v. Otter Tail Power Co.*, 210 N.W.2d 188, 202 (N.D. 1973). We conclude the court's instruction correctly advised the jury of the applicable law.

[¶ 27] Although M.M. and Thomas Moore claim the district court failed to instruct the jury that the duty of care to a child is higher than the duty of care to an adult as outlined in *Besette*, 310 N.W.2d 759, the record reflects that the court gave this part of their requested instruction to the jury. We conclude the court did not err in its instructions to the jury.

## V

[¶ 28] In view of our disposition of this case, it is unnecessary to address the other issues raised. We reverse the judgment and remand for a new trial.

[¶ 29] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.